**DESISTO COLLEGE, INC. and Loren E. Horner, Plaintiffs,**

v.

**The TOWN OF HOWEY–IN–THE–HILLS, Thomas P. Line, in his individual capacity, and Paul Mazade, in his individual capacity, Defendants.**

No. 87–1–Civ–Oc–14.

United States District Court,
M.D. Florida,
Ocala Division.

June 29, 1989.

Roderick MacLeish, Jr., Fine & Ambrogne, Boston, Mass., Stephen H. Durant, Martin, Ade, Birchfield & Johnson, P.A., Jacksonville, Fla., for plaintiffs.

Keith R. Mitnick, and John Robertson, Robertson & Williams, & Mitnik, P.A., Orlando, Fla., for defendants.

### ORDER

SUSAN H. BLACK, District Judge.

This case came on to be heard on the Defendants' Amended Motion For Attorneys' Fees, Pursuant To 42 U.S.C. § 1988 & Rule 11, filed April 24, 1989, and Plaintiff's Motion For Review Of The Clerk's Taxation Of Costs, filed May 9, 1989.

Plaintiffs filed a memorandum opposing the defendants' motion on May 15, 1989. Roderick MacLeish, counsel for plaintiffs, filed a memorandum opposing the part of defendants' motion relating to Fed.R.Civ.P. 11 sanctions, on May 15, 1989. The Court heard oral argument on May 25, 1989.

### I. Costs

The defendants seek recovery of costs in the amount of $37,915.12 under 28 U.S.C. § 1920, 28 U.S.C. § 1821, and 42 U.S.C. § 1988. The defendant Thomas P. Line separately seeks recovery of costs in the amount of $2,306.25 under 28 U.S.C. § 1920 and 42 U.S.C. § 1988. The Court shall first summarize the law concerning the award of costs and then review the particular items that plaintiff argues cannot be awarded.

■ Fed.R.Civ.P. 54(d) states that costs are "allowed as of course" to the prevailing party. *See* Fed.R.Civ.P. 54(d). Based on this language and the procedure whereby the Clerk of Court is authorized to tax costs administratively and without Court approval, the Court finds that there exists a presumption that the prevailing party will receive costs. *See* Fed.R.Civ.P. 54(d); *see also Hudson v. Nabisco Brands, Inc.,* 758 F.2d 1237, 1242 (7th Cir.1985). To rebut this presumption, the losing party must demonstrate that "there is some fault, misconduct, default, or action worthy of penalty on the party of the prevailing side." *Hudson,* 758 F.2d at 1242 (*quoting Delta Air Lines v. Colbert,* 692 F.2d 489, 490 (7th Cir.1982)).[1]

---

1. This Court's research has not found any Eleventh Circuit Court of Appeals authority on this issue. This court is aware, however, that two district courts in this circuit have applied different presumptions in considering the issue of costs. *See National Bancard Corp. v. Visa, U.S.A., Inc.,* 112 F.R.D. 62, 66 (S.D.Fla.1986); *Neely v. General Electric Co.,* 90 F.R.D. 627, 630 (N.D.Ga.1981). These courts did not, however, analyze the language of the federal rules or the substantial case authority adopting contrary presumptions. Indeed, in *Neely* the court justified placing the burden of proof as to the necessity of a deposition on the prevailing party by finding that the necessity of a deposition was "peculiarly within the knowledge of the prevailing party." 90 F.R.D. at 630. This Court disagrees with that conclusion as it applies to depo-

sitions. This Court sees no reason why at the conclusion of the case a losing party cannot discern the necessity of a deposition for the purpose of arguing whether or not the deposition was necessarily obtained. If a deposition was taken for a reason only within the knowledge of the prevailing party, it is likely that the deposition was not necessarily obtained. The court in *National Bancard Corp.* relied on this dictum in *Neely* in assigning the burden of proof and is likewise distinguishable.

The burden of proof may, however, be placed on the prevailing party as to certain costs which are matters within the exclusive knowledge of the prevailing party. Photocopying expenses sought under 28 U.S.C. § 1920(4), for example,

The costs allowed under Fed.R.Civ.P. 54(d) are those items specifically set out in 28 U.S.C. § 1821, 28 U.S.C. § 1920, or some other "explicit statutory or contractual authorization." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 & 445, 107 S.Ct. 2494, 2497 & 2499, 96 L.Ed.2d 385, 391 & 393 (1987). Although Fed.R.Civ.P. 54(d) gives the Court discretion to deny costs under those statutes, Fed.R.Civ.P. 54(d) does not authorize the Court to award prevailing parties costs above the statutory levels. *Id.* 482 U.S. at 444–45, 107 S.Ct. at 2499, 96 L.Ed.2d at 393.

In this case, the Court granted the defendants' motion for summary judgment, *see DeSisto College, Inc. v. Town Of Howey-In-The-Hills*, 706 F.Supp. 1479, 1507 (M.D. Fla.1989), thereby making the defendants prevailing parties under Fed.R.Civ.P. 54(d). The defendants thereafter filed their bill of costs on April 25, 1989. The Clerk on the same date taxed costs against the plaintiffs.[2]

Pursuant to Fed.R.Civ.P. 54(d), the plaintiffs moved for the Court to review the Clerk's taxation of costs. In particular, the plaintiffs argue that the defendants cannot recover any costs under 42 U.S.C. § 1988, pursuant to this Court's order of March 23, 1989, and that the defendants' costs sought under 28 U.S.C. § 1920 and 28 U.S.C. § 1821, should be reduced. The Court will address each of these arguments in turn.

## A. The March 23, 1989, Order

The defendants originally filed a "motion for costs" on February 17, 1989. On March 23, 1989, this Court entered an order striking the defendants' motion because the Court found that the defendants had not filed a bill of costs as required by Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920, and because the Court could not distinguish among the costs that the defendants sought under 42 U.S.C. § 1988, 28 U.S.C. § 1920, and 28 U.S.C. § 1821. The Court directed the defendants to file a bill of costs which did not include as costs those items that could be recovered as attorney's fees under 42 U.S.C. § 1988. *See* March 23, 1989, order at 7, ¶ 3. Despite this direction, the defendants nonetheless included attorney's fees items on their bill of costs.

■ Although 42 U.S.C. § 1988 read literally states that a reasonable attorney's fee may be allowed the prevailing party "as part of the costs," such costs have not been allowed "as of course" to prevailing defendants. Because 42 U.S.C. § 1988 permits prevailing defendants to recover costs only upon meeting a higher burden, *see infra*, the Court shall disallow costs which the defendants seek under the authority of 42 U.S.C. § 1988. The Court shall discuss attorney's fees under 42 U.S.C. § 1988 *infra*.

## B. Reduction Of Defendants' Costs

The plaintiffs do not dispute that the defendants may recover their costs under 28 U.S.C. § 1920 and 28 U.S.C. § 1821. The plaintiffs argue, however, that the defendants have not established that the costs listed in their bill of costs satisfy the requirements of 28 U.S.C. § 1920,[3] or 28

---

are generally costs within the exclusive knowledge of the prevailing party.

**2.** In the Middle District of Florida, the Clerk of Court has assigned the duty of providing notice of the taxation of costs to the prevailing party. This duty is clearly delineated on an affidavit on the form the Clerk provides to prevailing parties which is used for the taxation of costs.

**3.** Section 1920 provides as follows:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

U.S.C. § 1821.[4]

### 1. *Transcript Of Court Hearing*

Plaintiffs concede that the defendants may recover $292 for the stenographic transcript of the hearing on the defendants' motion for summary judgment under 28 U.S.C. § 1920(2). The Court shall, therefore, award the defendants $292 for that cost.

### 2. *Depositions*

■ The Court may award fees of the court reporter for all or any part of the stenographic transcript "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Whether or not a stenographic transcript was "necessarily obtained for use in the case" or merely for the convenience of the attorney is to be determined on a case by case basis. *Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 337 (5th Cir. Unit B 1981). The Court enjoys wide latitude in this determination. *Id.* Furthermore, contrary to plaintiffs' argument, this circuit has rejected any blanket rule that a deposition must be admitted in evidence in order to be recoverable. *See Murphy v. City Of Flagler Beach*, 761 F.2d 622, 631 (11th Cir.1985).

■ The disposition of a case on a motion for summary judgment is no impediment to an award of costs. *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir.1985). Furthermore, the necessity of a deposition is determined in light of the facts known at the time that the deposition was taken. *Hudson*, 758 F.2d at 1243.

■ In this case, the plaintiffs argue that the $14,582.98 sought by the defendants as fees of the court reporter at the depositions in this case were not necessarily obtained for use in the case. Plaintiffs state that the Court's finding that the parties' extreme factual contentions were not material to the case rendered virtually all of the depositions unnecessary.

The Court finds that the plaintiffs' argument is given with the benefit of hindsight. It is the foolhardy litigant who, although believing in the strength of a dispositive legal issue, conducts no discovery into an opponent's allegations or discovery on alternative theories. The defendants in this case vigorously pressed their legal theories while at the same time conducting discovery on plaintiff's allegations. This Court cannot now state that such discovery was unnecessary in light of the extraordinary relief sought by the plaintiffs and the derogatory nature of plaintiffs' allegations. The Court finds that the defendants necessarily took the depositions in order to answer the plaintiffs' arguments raised in the plaintiffs' motions for summary judgment and for potential use at trial.

Furthermore, this Court does not find that the defendants' discovery as to nonmaterial issues was not necessarily obtained for use in the case. By definition, when a court grants a motion for summary judgment, the court finds that there is no dispute as to any material fact. It was not the intention of Congress in 28 U.S.C. § 1920 to preclude parties prevailing on motions for summary judgment from recovering their costs for depositions. In addition, even depositions needed to establish nonmaterial facts are often necessary to elucidate the factual background in a case and make it possible for the court to discern the material from the nonmaterial issues.

Finally, the Court notes that the plaintiffs, on the one hand, as evidenced by the plaintiffs' appeal, continue to dispute the merits of the case and contend that the factual issues that the Court found were not material were indeed material. On the other hand, the plaintiffs in the instant motion embrace the Court's finding of nonmateriality. The plaintiffs cannot have it both ways.

The Court, therefore, finds that the depositions were necessarily taken for use in

---

4. Section 1821 provides in part as follows:
 (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take

his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.
28 U.S.C. § 1821(a)(1).

the case. The Court will award $14,582.98 to the defendants for the costs of the court reporter in stenographically recording depositions.

### 3. *Subpoena Service*

■ The defendants seek reimbursement of $807.94 for expenses incurred in serving subpoenas for depositions under 28 U.S.C. § 1920 and 28 U.S.C. § 1821. The defendants claim that they are entitled to costs incident to taking depositions under these provisions.

The Court finds that the language of the aforementioned statutes does not permit recovery of these costs, and the defendants conceded at oral argument that they had no authority for recovery of these costs. *See also Zdunek v. Wash. Metro. Area Trans. Auth.,* 100 F.R.D. 689, 692 (D.D.C.1983) (costs for service of subpoenas not recoverable under 28 U.S.C. § 1920(1)). The Court will, therefore, disallow the cost of subpoena service.

### 4. *Mileage And Travel*

■ The defendants claim reimbursement in the amount of $1,518.26 as travel and mileage costs of their deponents. The defendants claim that these costs are recoverable as costs incident to taking depositions and under 28 U.S.C. § 1821 and 28 U.S.C. § 1920.

The Court finds that the express language of 28 U.S.C. § 1821(a)(1) permits recovery of costs for the attendance of a witness at a deposition. Section 1821(c) outlines with specificity the amount of the witness' travel expenses which may be recovered. Similarly, 28 U.S.C. § 1920 permits recovery for the fees of witnesses.

The Court once again rejects plaintiff's argument that the depositions were not necessarily incurred for use in the case because they were not used in a trial and are therefore not recoverable under 28 U.S.C. § 1920. The Court has already found that this circuit has rejected such a narrow reading of 28 U.S.C. § 1920. *See*

*supra.*[5] The Court will, therefore, award the defendants the sum of $1,518.26 for the travel and mileage costs of their deponents.

### 5. *Witness Fees*

■ Plaintiffs concede that 28 U.S.C. § 1821 permits recovery of defendants' witness fees. Plaintiffs request that the Court disallow $193.05 of the $857.80 that the defendants seek. The $193.05 represents the cost of witnesses delivering various documents to the defendants' offices under subpoenas duces tecum. Plaintiffs argue that the defendants did not adequately document the dates on which the cost was incurred, and that the cost is not a "witness fee" under either 28 U.S.C. § 1821 or 28 U.S.C. § 1920.

The Court finds that neither 28 U.S.C. § 1920 nor 28 U.S.C. § 1821 permit recovery of the $193.05 expense. The Court will, therefore, award the defendants a witness fee in the amount of $664.75.

### 6. *Photocopies*

■ The parties agree that photocopying "necessary for the maintenance of [an] action" can be recovered under 28 U.S.C. § 1920(4). *See Allen v. United States Steel Corp.,* 665 F.2d 689, 697 n. 5 (5th Cir. Unit B 1982). Copies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the Court's consideration are recoverable. *See Fressell v. AT & T Technologies, Inc.,* 103 F.R.D. 111, 115–16 (N.D. Ga.1984). Copies obtained only for the convenience of counsel are not recoverable. *See Allen v. Freeman,* 122 F.R.D. 589, 591 (S.D.Fla.1988). Extra copies of filed papers, correspondence, and copies of cases are considered obtained only for the convenience of counsel. *Fressell,* 103 F.R.D. at 116.

■ The defendants seek $971.87 for their costs of copying cases, and $8,885.50 for other unspecified copying. The defen-

---

**5.** Even if the depositions were not necessarily obtained for use in the case, the witness fees would apparently be recoverable costs. The Court rejects plaintiffs' implicit argument that 28 U.S.C. § 1920(3) contains a requirement that the prevailing party's witness fees should be necessarily obtained for use in the case. Although 28 U.S.C. § 1920(2) & (4) require a showing of necessity, no such language is contained in § 1920(3) or 28 U.S.C. § 1821.

dant Thomas P. Line seeks $58.00 for copies of cases and $96.80 for other copying.

At oral argument· the defendants conceded that many of the copies were made for the convenience of counsel and included costs for copies of cases. The defendants have not itemized the copies they claim were necessarily obtained for use of the case and those that were for their own convenience. The Court will, therefore, not award the defendants costs for photocopying.

### 7. *Trial Exhibits*

The defendants seek $136.13 for the cost of two exhibits they prepared for use at trial in this case under 28 U.S.C. § 1920(4) and the authority of *Independence Tube Corp. v. Copperweld Corp.*, 543 F.Supp. 706, 722–23 (N.D.Ill.1982), *aff'd* 691 F.2d 310 (7th Cir.1982), *rev'd on other grounds*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). One trial exhibit is a copy of the video deposition of Michael DeSisto. The other is a zoning map of Howey-in-the-Hills. The Court finds that these items were necessarily obtained for use in the case and shall award the defendants $136.13 for this cost under 28 U.S.C. § 1920(4).

### 8. *Other Costs*

The defendants seek recovery of their costs or expert fees, fax transmittal, federal express, postage, telephone, travel, trial preparation, film development, and computerized legal research. The defendants conceded at oral argument, however, that these costs are not recoverable as costs, but rather should be considered as part of attorney's fees under 42 U.S.C. § 1988. The Court will not allow recovery of these items as costs.

### 9. *Total Costs*

The Court finds that the defendants incurred recoverable costs in the amount of $292.00 for the transcript of a hearing, $14,582.98 for transcripts of depositions, $1,518.26 for travel and mileage of witnesses, $664.75 for witness fees, and $136.13 for the cost of trial exhibits. The defendants' costs total $17,194.12. The Court will, vacate the defendants' original bill of

costs and order the Clerk of Court to enter a judgment for the defendants and against the plaintiffs for costs in the amount of $17,194.12.

The Court finds that the defendant Thomas P. Line incurred a recoverable cost of $292.00 for the cost of the transcript of a hearing. This cost is separate and in addition to Line's share of the defendants' total costs. The Court will vacate Line's original bill of costs and order the Clerk of Court to enter a judgment for the defendant Thomas P. Line and against the plaintiffs for costs in the amount of $292.00.

### II. *Attorney's Fees*

The defendants seek recovery of their attorney fees under 42 U.S.C. § 1988 against the plaintiffs and under Fed.R. Civ.P. 11 against the plaintiffs and their attorney, Roderick MacLeish. This Court will first consider the availability of a fee award under 42 U.S.C. § 1988 and then consider the availability of fees under Fed. R.Civ.P. 11.

### A. 42 U.S.C. § 1988

Section 1988 provides that "in any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, 1985, and 1986 of [Title 42] ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the cost." 42 U.S.C. § 1988. Although a prevailing plaintiff should receive attorney's fees absent special circumstances, prevailing defendants are awarded attorney fees only if they can demonstrate that the plaintiff's claim was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (*quoting Christianburg Garment Company v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). The Court will first determine whether or not the case was unreasonable and then analyze the amount of the fee that the Court will award.

### 1. *Reasonableness Of Plaintiffs' Constitutional Claims*

In determining whether or not a suit was frivolous, the Court should not

use hindsight logic or focus on whether or not the claim was ultimately successful. *See Christianburg*, 434 U.S. at 421–22, 98 S.Ct. at 700–01. Although a case may seem unreasonable at the end of the case, the claim may have been reasonable at the outset of the case if decisive facts did not emerge until discovery or trial, or if the law changed or clarified in the midst of litigation. *Id.* However, once discovery is over and the law has not changed during pendency of the case, a case that is deemed frivolous is deemed frivolous for the entire length of the litigation. *See Brown v. City Of Palmetto, Georgia*, 681 F.2d 1325, 1327 (11th Cir.1982).

 There are no hard and fast rules in determining whether or not a case is frivolous. *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985). Such determinations are instead made on a case-by-case basis. The Eleventh Circuit Court of Appeals has, however, suggested that the following factors should typically be considered in determining whether or not a case is frivolous: 1) whether or not the plaintiff established a prima facie case; 2) whether or not the defendant offered to settle; and 3) whether or not the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Id.* The Court shall consider each of these factors in turn and then analyze other circumstances relevant to determining whether or not the case was unreasonable.

### a. Prima Facie Case

Plaintiffs' Fourth Amended Complaint in essence presented three legal theories to support their claims for relief. First, the plaintiffs argued that under state law the meaning of the word "school" in Zoning Ordinance Section 6(1)(A)(2) included colleges. Second, the plaintiffs argued that Ordinance 161 was void for vagueness. Third, the plaintiffs argued that the en-

forcement of Section 6(1)(A)(2), and the passage of Ordinances 160, 161, and 162 violated their equal protection and substantive due process rights. *See DeSisto College, Inc., v. Town Of Howey–In–The–Hills*, 706 F.Supp. 1479, 1494 (M.D.Fla.1989).

As to the first two theories, the defendants concede that the plaintiffs had stated *prima facie* cases. The defendants do not claim attorney's fees for these claims and the Court will, therefore, not determine whether or not they were frivolous. The Court will, therefore, not award attorney's fees to the extent that the attorney's fees include time spent on these theories.

As to the claims that the enforcement of Section 6(1)(A)(2) and the passage of Ordinances 160, 161, and 162 violated plaintiffs' equal protection and substantive due process rights, the Court has already found that plaintiffs had not established a *prima facie* case. 706 F.Supp. at 1501–1506. In particular, the Court found that the plaintiffs had presented no evidence that the articulated basis for the enforcement of Section 6(1)(A)(2) and the passage of Ordinances 160, 161, and 162, was not legitimate or that these governmental actions were not rationally related to the articulated basis. *Id.*[6] The Court similarly found that the plaintiffs presented no evidence that no hypothesized basis could constitute a legitimate basis rationally related to the governmental actions. *Id.*

 A finding that a case is unreasonable and frivolous is supported when the party utterly fails to produce any evidence in support of material issues. *See Sullivan v. School Bd. Of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir.1985). In this case, plaintiffs failure to present any evidence as to the two main issues in the case supports a finding that plaintiffs' case was unreasonable.

**6.** The Court once again rejects plaintiffs' argument that it presented evidence that the governmental actions had no rational basis. Evidence that government officials were motivated by irrational fears and prejudice does not constitute evidence that articulated or hypothesized ratio- nales for governmental actions were not legitimate. Indeed, it is beyond dispute that the articulated governmental purpose in this case, the preservation of the residential character of neighborhoods, is legitimate. 706 F.Supp. at 1500.

### b. Defendants' Offer Of Settlement

In considering whether or not defendants' offer of settlement supports the unreasonableness of plaintiffs' case, the Court shall only consider the undisputed facts and resolve all disputed facts in plaintiffs' favor. Accordingly, the Court need not conduct an evidentiary hearing as plaintiffs suggest.

By order of this Court, the parties conducted settlement negotiations early in the litigation. The plaintiffs concede that the defendants offered to settle the case at that time. Plaintiffs agree that the defendants offered to annex land not part of Howey–In–The–Hills but adjacent to the DeSisto High School campus and make that land available for use by DeSisto College. The plaintiffs state, however, that conditions attached to the settlement proposal made plaintiffs' acceptance of the settlement offer impossible. In particular, plaintiffs state that their need to purchase the annexed property made the defendants' offer of settlement unacceptable. Another condition of the settlement that plaintiffs could not accept was the prohibition of plaintiffs using the Lakeshore Boulevard property for educational purposes within one year of the settlement.

Plaintiffs offer their own settlement proposals as evidence that they proceeded in settlement negotiations reasonably. Plaintiffs state that they offered to limit their use of town property to "specifically defined areas." The plaintiffs do not state where those specifically defined areas are. The plaintiffs further state that they offered to settle the case in the fall of 1988 after the parties filed their motions for summary judgment. Plaintiffs state that the case did not settle in the fall of 1988, because the defendants insisted in the plaintiffs' payment of $150,000 in attorney fees.

The Court finds that the defendants offered to settle the case during the early stages of this litigation. The defendants' offer of settlement appears to have been a generous one in light of the strength of the defendants' legal position. The Court, therefore, finds that the plaintiffs' refusal of the settlement offer further supports the unreasonableness of plaintiffs' filing the case and continuing the litigation after the case was filed.

### c. Disposition Of The Case Prior To Trial

The Court disposed of the case on a motion for summary judgment. This factor weighs in favor of a finding that the case was unreasonable.

### d. Other Circumstances

Plaintiffs present numerous reasons for their failure to produce any evidence tending to establish that the defendants had no legitimate purpose for their legislation and enforcement actions and that the legislation and enforcement actions were not rationally related to the legitimate purpose. These arguments are as follows: 1) that their interpretation of *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) renders their failure to produce any evidence reasonable; 2) that they put forth novel theories of the law thereby rendering their case reasonable; 3) that their alleged reliance on this Court's denial of the defendants' motion to dismiss early in this case rendered their case reasonable; 4) that the presence of facts contradicting the Court's ruling on the motion for summary judgment render their case reasonable; 5) that plaintiffs' lack of funds should preclude an award of attorney's fees. The Court shall address each of these issues in turn.

#### (1). Cleburne

The Court rejects plaintiffs' argument that their reading of *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985), was reasonable and that their reading of *Cleburne* justified their belief that they could disregard articulated or hypothesized governmental purposes. First, the Supreme Court in *Cleburne* did not disregard articulated or hypothesized governmental purposes in its rational basis review or suggest that such disregard would not conflict with settled law requiring federal courts to uphold statutes and

enforcement actions based on legitimate articulated or hypothesized governmental purposes. Second, a plain reading of *Cleburne* reveals that handicapped persons are not a protected class under the fourteenth amendment, and that federal courts must, therefore, uphold legislation or enforcement actions by government officials which affect handicapped persons upon a finding that the legislation or enforcement action is supported by a rational basis. Third, this circuit plainly stated in *E & T Realty v. Strickland*, 830 F.2d 1107, 1115–16 (11th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988), that *Cleburne* was applicable only to cases in which statutes created classifications on their face,[7] and the statutes in this case do not create illegal classifications on their faces.

Plaintiffs should find no comfort in this Court's citation to Judge Kravitch's concurring opinion in *E & T Realty v. Strickland*, 830 F.2d at 1115–16. The Court's reading of *Cleburne* was not based on Judge Kravitch's opinion, but on a plain reading of *Cleburne* and the Supreme Court's precedents on rational basis review. Judge Kravitch's opinion merely lends further support to the Court's reading.[8]

Plaintiffs should similarly find no comfort in this Court's "but see" citation to *Brennan v. Stewart*, 834 F.2d 1248, 1258 (5th Cir.1988) in the opinion granting summary judgment. *See* 706 F.Supp. at 1503. This Court's citation was merely a recognition that the *Brennan* court "assume[d] without deciding" that *Cleburne* required a rational basis scrutiny that is "somewhat closer than usual." *Id.* at 1258. The *Brennan* court found that even under such a searching inquiry, the classification in that case had a rational basis. More importantly, the court in *Brennan* did not use *Cleburne* to inquire into the subjective motivations of government officials or to offer those motivations as a evidence of pretextual governmental purposes. Indeed, had

7. Contrary to plaintiffs' argument, *E & T Realty v. Strickland,* 830 F.2d 1107, 1115–16 (11th Cir. 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988), does not support their position on any other ground. In *E & T Realty,* the court of appeals vacated the judgment of the district court which had found an equal protection violation. *Id.* at 1114. The court found that there was not enough evidence in the record on appeal to determine whether or not the plaintiffs were similarly situated to the group with whom the plaintiffs were comparing themselves. *Id.* at 1111. The court also found that the district court failed to find that the discrimination was intentional. *Id.* at 1114. The court found that the standard applied by the district court could have resulted in the finding of an equal protection violation for any departure from state law. *Id.* The Court stated that in cases of mere errors, mistakes in judgment, or arbitrary applications of neutral statutes there would be no equal protection violation. *Id.*

In the instant case, the court found that the plaintiffs were not similarly situated with the persons that plaintiffs claimed were treated differently from themselves. This finding alone is enough to distinguish the case from *E & T Realty.* In addition, it is apparent that the defendants in this case did not create classifications by mere error, by mistake, or by acting arbitrarily. There is no dispute that the defendants intentionally created the challenged classification between schools and colleges and the classification between colleges and various oth-

er intensive uses of property. *Id.* The presence of such intent does not, however, constitute an equal protection violation and does not give the plaintiffs license to probe the subjective motivations of government officials or to claim that an articulated or hypothesized basis for the classification was pretextual. A showing that governmental officials *intentionally* created various classifications does not constitute an equal protection violation absent a showing that the articulated or hypothesized governmental purpose for the classification was not legitimate or that the legislation and enforcement were not rationally related to that purpose.

8. Contrary to plaintiffs' suggestion, Judge Kravitch's opinion was not at variance with the majority opinion in *E & T Realty* on the issue of whether or not hypothesized governmental purposes could sustain governmental action on rational basis review. Judge Kravitch's opinion stated only that she would have reversed rather than vacated the opinion of the district court in part, because under *Cleburne* the existence of "plausible reasons" for the governmental actions precluded any finding of an equal protection violation. The majority opinion does not address the question whether or not plausible or hypothesized purposes for the challenged classification could defeat an equal protection claim. Furthermore, it is unclear whether or not the question was presented to the court. The majority analysis similarly does not preclude the district court in that case from reaching exactly the same conclusion as did Judge Kravitch.

the *Brennan* court done so, it would have strayed from the rulings of its own circuit *en banc*, which found that *Cleburne* does not permit inquiry into government officials' actual motivations on rational basis review. *See Shelton v. City Of College Station*, 780 F.2d 475, 484 (5th Cir.) (en banc), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986); *See also Stern v. Tarrant County Hospital*, 778 F.2d 1052, 1060–61 (5th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986).

### (2). Novel Theories Of The Law

Plaintiffs argue that their case should not be considered unreasonable because they put forth novel theories of the law. This is the first time that plaintiffs have told the Court that their case was not supported by existing law but rather was supported by novel theories of the law.

■ The Court rejects plaintiffs' contention that they litigated this case in an effort to put forth novel theories of the law for the purpose of changing existing law. Had plaintiffs indeed had these purposes, they would have had the obligation to do so reasonably and with candor under Fed.R. Civ.P. 11. *See United States v. Milam*, 855 F.2d 739, 744–45 (11th Cir.1988). Plaintiffs neither put forth novel theories of the law reasonably nor candidly.

The most obvious example of the plaintiffs' litigating foreclosed claims without being candid with the Court is their suits against the various individual defendants throughout this litigation. The plaintiffs completely disregarded the controlling precedents in this circuit on legislative immunity, *see DeSisto College, Inc.*, 706 F.Supp. at 1483 n. 3 (citing cases), *see also New Port Largo, Inc. v. Monroe County*, 706 F.Supp. 1507, 1519–20 (S.D.Fla.1988), and did not even attempt to distinguish those precedents. *See* Plaintiffs' Memo-

randum In Support Of Their Opposition To Their Opposition To The Motion Of Defendants Arthur W. Pratt, Et Al., To Dismiss The Second Amended Complaint, at 22–27. It is remarkable that the case plaintiffs relied upon for their position on legislative immunity, *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir.1984), itself recognized the inconsistency of its decision with precedents of this circuit.[9]

Plaintiffs similarly failed to propose any legal basis for their obtaining injunctive relief against the individual defendants acting in their personal capacities. The plaintiffs have still not explained how prospective relief from this Court against the individual defendants in their personal capacities could protect the plaintiffs' property interests.[10] It is only by enacting or enforcing ordinances, activities that can only be performed by the defendants in their official capacities, that the defendants could have affected plaintiffs' property interests. The plaintiffs did not until this motion for attorney's fees even attempt to distinguish *Akins v. Board of Governors Of State Colleges & Universities*, 840 F.2d 1371, 1377–78 (7th Cir.), *vacated on other grounds*, — U.S. —, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988), *former opinion reinstated as to one plaintiff*, 867 F.2d 972 (7th Cir.1988), which states that prospective relief against government officials in their individual capacities is unavailable under 42 U.S.C. § 1983.[11]

Finally, plaintiffs allege that their interpretation of *Cleburne* constitutes a novel theory of the law. Once again, this is the first time that plaintiffs have admitted that their interpretation of *Cleburne* constitutes a novel theory of the law and not a statement of existing law. Furthermore, plaintiffs' theory is without merit. If a federal court were to probe the minds of government officials in rational basis review,

---

9. *See, Cutting*, 724 F.2d at 262, ("To the extent that the references to *Lake Country* [*Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) ], and *Hernandez* [*v. City of Lafayette*, 643 F.2d 1188 (5th Cir.1981) ] suggest that the court was thinking of absolute immunity, we respectfully disagree").

10. The only harm plaintiffs alleged in this case is the deprivation of their property interests.

11. This Court states no view as to the persuasiveness of the allegedly contrary cases.

there would be very little or nothing that would distinguish rational basis review from strict scrutiny. Such a result would nullify well settled constitutional law.

The Court finds that plaintiffs' allegedly novel theories were without reasonable merit and plaintiffs were not candid with the Court. This Court, therefore, cannot find that plaintiffs reasonably litigated this case based on novel theories of the law.

(3). Reliance On This Court's Orders

The plaintiffs state that they proposed their novel interpretation of *Cleburne* in their opposition to Defendant Thomas P. Line's Motion To Dismiss First Amended Complaint, filed January 29, 1989, and the defendants put forth the legal theories that this Court ultimately found meritorious. Plaintiffs argue that they continued litigating this case in reliance on this Court's order denying defendant Line's motion to dismiss which they construed as the "approval" of their theory of the case. The plaintiffs' argument implicitly suggests that this Court's denial of the motion to dismiss and this Court's granting summary judgment are inconsistent.

This Court has once again reviewed the briefs that the parties submitted on the motion to dismiss filed by Thomas P. Line. Furthermore, this Court remembers the motion, the amended motion to dismiss filed thereafter by the defendants which stated the same arguments, and the hearing which the Court conducted on the amended motion to dismiss on April 21, 1987. The Court also reviewed the orders through which the Court disposed of the motions to dismiss. In particular, the Court on March 17, 1987, denied Thomas P. Line's Motion To Dismiss summarily and without analyzing any theory of the law. The Court similarly denied the various other motions to dismiss on July 21, 1987, summarily and without setting forth an analysis or approving any theory of the law.

The Court initially finds that the plaintiffs did indeed brief *Cleburne*. The plaintiffs did not, however, inform the Court that their interpretation was an attempt to put forth a novel legal theory to change existing law on rational basis review. *See* Plaintiffs' Memorandum In Support Of Their Opposition To Their Opposition To The Motion Of Defendants Arthur W. Pratt, Et Al., To Dismiss The Second Amended Complaint, at 11–12. Plaintiffs' suggestion to the contrary is erroneous. *See* Plaintiffs' Memorandum In Opposition To Defendants' Amended Motion For Attorneys' Fees, Pursuant To 42 U.S.C. § 1988 & Fed.R.Civ.P. Rule 11 at 22. This Court's denial of the motion to dismiss cannot, therefore, be construed as approval of a theory not presented to the Court.

Plaintiffs should not have construed the Court's denial of the motion to dismiss as the approval of their legal theory because even under traditional rational basis review, the First Amended Complaint could be construed to have alleged a claim. The First Amended Complaint alleged that the purpose of the legislation and enforcement action was to exclude learning disabled students from the town. Such a governmental purpose standing alone is irrational. The plaintiffs themselves asserted that argument. *See* Plaintiffs' Memorandum In Support Of Their Opposition To Their Opposition To The Motion Of Defendants Arthur W. Pratt, Et Al., To Dismiss The Second Amended Complaint, at 14 n. 2. The First Amended Complaint, however, said nothing of any legitimate reasons for the governmental conduct articulated or hypothesized at the time of the allegedly unconstitutional conduct. It was only when the Court could look beyond the allegations of the complaint on a motion for summary judgment that the articulated or hypothesized purposes could be discerned. Because the Court had to look beyond the allegations of the Fourth Amended Complaint to dispose of the case, this Court's denial of the motion to dismiss on March 17, 1987, was perfectly consistent with the Court's ultimate disposition of the case.

Plaintiffs also should not have construed the Court's denial of the motion to dismiss as the approval of their claim because a broad construction of the alleged facts established violations of the fourteenth amendment which were ultimately not as-

serted by the plaintiffs. It was not clear on March 17, 1987, whether or not the First Amended Complaint alleged a violation of procedural due process or substantive due process. It was similarly unclear whether or not the plaintiffs were asserting the deprivation of a liberty or a property interest. It was, therefore, necessary for the Court to deny the motion to dismiss and for the case to proceed to discovery.

Finally, even if the plaintiffs wrongly interpreted the Court's March 21, 1987, order at the time it was rendered, they should have discovered their own error after the Court rendered its November 10, 1987, order. In that order, the Court granted the defendants' motion to dismiss based on the defendants' absolute legislative immunity. As this was a legal theory that the defendants had also presented on Thomas P. Line's motion to dismiss the first amended complaint, the motion which the Court had initially denied, plaintiffs should have known that their legal theories were not approved by this Court's initial denial of the defendant Line's motion to dismiss, and that the defendants' theories remained viable.

This Court would finally pause to clarify other misinterpretations of this Court's orders. Plaintiffs inaccurately state that this case would have gone to trial but for the unavailability of a visiting judge to try their case. See Plaintiffs' Memorandum In Opposition To Defendants' Amended Motion For Attorneys' Fees, Pursuant To 42 U.S.C. § 1988 & Fed.R.Civ.P. Rule 11, at 56. This Court scheduled a trial in this case on August 24, 1988, after Judge Joseph P. Kinneary agreed to try cases in the Middle District of Florida, Ocala Division. Thereafter, on October 6, 1988, Judge Kinneary was designated by Chief Justice Rehnquist to sit in Ocala. The Court scheduled the trial in this case prior to the filing of the motion for summary judgment and without any prejudgment as to the merits of the case. The case was removed from the trial calendar when it became obvious to the Court that the motion for summary judgment would be granted and that an opinion had to be written. Indeed, Judge Kinneary was prepared to try the case. In fact, the case was the first case set on his calendar. Judge Kinneary actually came to Ocala and tried the remaining cases on the calendar. Plaintiffs' suggestion to the contrary is erroneous and objectionable.

Another misinterpretation of this Court's orders is plaintiffs' reading of this Court's discussion of burden shifting in equal protection cases at 706 F.Supp. at 1503. See Plaintiffs' Memorandum In Opposition To Defendants' Amended Motion For Attorneys' Fees, Pursuant To 42 U.S.C. § 1988 & Fed.R.Civ.P. Rule 11, at 35. This Court did not state that a finding that the defendants were motivated in part by invidious discriminatory purposes would shift the burden of proof to the defendants on the issue of causation. The Court stated that such a burden shifting would occur if and only if heightened scrutiny were applied as would occur in a case of racial discrimination. The Court stated the standard only to demonstrate that plaintiffs' theory of the law even if accepted was necessarily incomplete. If a showing of invidious discrimination in a race discrimination case served only to shift the burden of proof on the question of causation, plaintiffs' showing of irrational fears and prejudice against the learning disabled could do no more than shift the burden of proof. A showing of irrational fear and prejudice by itself did not establish a violation of the equal protection clause as plaintiffs suggested. This Court emphasizes that no such burden shifting occurs in the case of traditional rational basis scrutiny or even in the case of enhanced rational basis scrutiny that plaintiffs propose. If such were the case, there would be little or no difference between rational basis scrutiny and strict scrutiny. This Court has already rejected such a result.

### (4). Factual Support For the Court's Ruling

Plaintiffs dispute this Court's findings that on the record presented to the Court on the defendants' motion for summary judgment that there were no issues of fact 1) that college students drive automobiles; 2) that DeSisto College students and their

automobiles would cause greater noise than would exist without the College being located in residential areas; and 3) that college use is a more intensive use of property than ordinary residential use. This Court finds that the plaintiffs had the opportunity to file briefs with this Court on those factual issues and to present oral argument on the issues. Indeed, the Court ordered plaintiffs, after the hearing on the motion for summary judgment, to file proposed findings of fact stating what evidence, other than evidence of defendants' motivations, showed that the legislation and enforcement had no conceivable rational basis. The plaintiffs cited no evidence tending to contradict the evidence of the four factors that had been before the governmental actors in this case. It is too late for plaintiffs to supplement the record or to reargue the motion for summary judgment at this time.

 The plaintiffs also suggest that the defendants could have used less restrictive means to control student parking and the intensity of the use of the College's property. The Court finds such arguments unpersuasive. Plaintiffs once again cling to the type of scrutiny applied in classifications involving protected classes or protected conduct, such as, speech in a public forum. Governmental actors are not bound to use least restrictive means in enacting traditional economic and social legislation not affecting protected classes or protected conduct so long as the means are rationally related to their ends. The Court, therefore, rejects plaintiffs' belated attempts to reargue the facts presented on the motion for summary judgment.

### (5). Plaintiffs' Lack Of Funds

 The indigence of a losing party is a factor along with the other factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), that the Court may consider in awarding attorney fees. *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir.1982). A losing party's indigence, if established, will limit but not eliminate the award of attorney fees if an award is merited. *Id.* The Court

shall consider the plaintiffs' arguments as to their alleged indigence in assessing the amount of the award of attorney's fees. Plaintiffs' alleged indigence does not, however, render an otherwise unreasonable case reasonable.

### e. Plaintiff's Constitutional Claims Were Unreasonable

The Court finds that plaintiffs' failure to establish a *prima facie* case, plaintiffs' failure to present any evidence in support of the two main issues in the case, plaintiffs' failure to accept defendants' reasonable settlement offer at the inception of the case, and the disposition of the case on a motion for summary judgment, establish that the case was unreasonable. The Court shall, therefore, award the defendants reasonable attorney's fees under 42 U.S.C. § 1988.

### 2. Amount Of A Reasonable Attorney's Fee

 In objectively calculating the value of counsel's services, the Court must multiply the hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Authority Of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). This will give the lodestar amount. The Court shall analyze each of these factors below.

### a. Reasonable Hourly Rate

 A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skill. *Id.* The applicant for attorney's fees bears the burden of producing satisfactory evidence of market rate. *Id.* Such proof must necessarily speak to rates actually billed and paid in similar lawsuits. *Id.* Testimony that a given fee is reasonable is unsatisfactory evidence of market rate. *Id.* The Court may accept opinion evidence, but such evidence is necessarily limited by the detail of the testimony on matters such as "similarity of skill, reputation, experience, similarity of case and client and breadth of the sample of which the expert has knowledge." *Id.* The Court may also consider

922

the *Johnson* factors in determining hourly rate. *Id.*

If the Court finds that counsel is inexperienced in the area of the law on which a case rests and counsel bills excessive hours to compensate for inexperience, the Court is required to reduce the hourly rate rather than reduce the number of hours. *Perkins v. Mobile Housing Bd.,* 847 F.2d 735, 738 (11th Cir.1988); *Norman,* 836 F.2d at 1301. The Court should not reduce both hourly rate and number of hours as such a reduction would impose a double penalty on inexperienced lawyers. *Norman,* 836 F.2d at 1301.

In this case, the parties agree that the hourly rates charged by defense counsel is reasonable. This Court is not, however, bound by the parties' stipulation. Although the Court is impressed by the credentials of defense counsel and the impressive results counsel have obtained in civil litigation, the Court finds that defense counsel did not demonstrate expertise in civil rights litigation. The Court presumes that counsel would have informed the Court if counsel had had any significant experience in civil rights litigation.

Having considered all the evidence presented on this motion including the *Johnson* factors, this Court finds that the number of hours worked by counsel in this case are greater than would be necessary by an attorney reasonably experienced in civil rights litigation. The Court accepts defendants' sworn affidavits and the affidavits of other experienced attorneys that it was necessary for counsel to spend the time that was actually billed. The Court finds, however, that the amount of time spent by counsel is due to counsel's relative inexperience in the area of 42 U.S.C. § 1983. The Court shall, therefore, reduce the hourly rate charged by counsel accordingly.

The defendants claim attorney's fees for the services of their attorneys at the following rates: John M. Robertson at $150 per hour, Keith R. Mitnik at $100 per hour, J. Stephen McDonald at $100 per hour, and Robert L. Wilson at $35 per hour. The Court finds based on its own observations

of counsel and counsel in comparable cases that counsel in this case should receive less than market rate due to their inexperience. The Court finds that a reasonable hourly rate for Keith Mitnik, Stephen McDonald, and John M. Robertson is $75 per hour. The Court finds that a reasonable hourly rate for a paralegal in this case would be $10 per hour.

The attorneys for Thomas P. Line claim that their reasonble hourly rate is $165 per hour for Jon Wilson and $105 per hour for Keith Hesse. They have, however, introduced no evidence that such hourly rates are reasonable. The Court shall, however, award them fees at the same rate as it does for the defendants' attorneys.

### b. *Hours Reasonably Expended*

Hours reasonably expended are billable hours, that is, "work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." *Perkins v. Mobile Housing Bd.,* 847 F.2d 735, 738 (11th Cir.1988). Counsel's sworn affidavit of the actual number of hours actually worked must be given "considerable weight" in calculating the number of hours reasonably expended.

The Court should, however, exclude those hours that are excessive, redundant or otherwise unnecessary. *Norman,* 836 F.2d at 1301. Such hours are not reasonably billed to the client and, therefore, to one's adversary. *Id.* The Court may not deduct hours which the Court finds resulted from the inexperience of counsel where that would result in a double penalty. *Id.* A double penalty would occur where the Court reduces the hourly rate charged by counsel. *Id.* The exclusion of hours for unnecessary work is left to the discretion of the trial judge. *Id.* The trial judge may, however, take into account the views of lawyers who litigate comparable cases. *Id.* The fee opponent has the burden of pointing out with specificity those hours that are allegedly redundant. *Id.*

The Court has reviewed the affidavits of counsel and of the various practitioners

who have reviewed the files in this case. The Court finds that these affidavits are sufficiently detailed and provide substantial evidence to support the reasonableness of the hours claimed in this case. In particular, the Court finds the Supplemental Affidavit In Support Of Defendants' Motion For Attorneys' Fees, Costs And Rule 11 Sanctions, filed May 23, 1989, to be persuasive as to the reasonableness of the number of hours counsel for the defendants spent in this case. Similarly, the Court finds that the affidavits of Keith Hesse and John M. Brennan, filed May 24, 1989, are persuasive as to the number of hours counsel for Thomas P. Line spent in this case.

 The Court agrees, however, with plaintiffs' objections to the number of hours claimed by the defendants, and will deduct the hours counsel have billed for time they spent dealing with the press and the time counsel spent on matters not relating to this case on the trial level. These hours are as follows: John Robertson, 11 hours; Keith Mitnik, 32.5 hours; and Stephen McDonald, 16.5 hours. Plaintiffs have not given specific objections to any of the defendants other hours. Plaintiffs general objections that the defendants have billed for excessive and redundant hours are too vague and shall not be given any weight by the Court.

In this case, counsel for the defendants state that they expended the following hours: John Robertson, 1,353.70; Keith R. Mitnik, 1,522.30; J. Stephen McDonald, 319.60; and Robert L. Wilson, 1,104.09. Counsel for Thomas P. Line state that they expended the following hours: Jon Wilson, 68.75; Keith Hesse, 181.25; Norman F. Burke, 8; Judith A. Cowan; 20.75. After deducting the aforementioned number of hours, the Court finds that the reasonable number of hours spent by counsel are as follows: John Robertson, 1,342.70; Keith Mitnik, 1,489.8; Stephen McDonald, 303.1; and Robert L. Wilson, 1,104.09; Jon Wilson, 68.75; Keith Hesse, 181.25; Norman F. Burke, 8; Judith A. Cowan, 20.75.

### c. Lodestar Amount

The Court finds that the following is the reasonable value of the representation of counsel in this case: John Robertson, $100,-702.50; Keith Mitnik, $111,735.00; Stephen McDonald, $22,732.50; and Robert Wilson, $11,040.90; Jon Wilson, $5,156.25; Keith Hesse, $13,593.75; Norman F. Burke, $600.00; Judith A. Cowan, $207.50. The total value of the services of the defendants' counsel in this case is $246,210.90. The total value of the services of Thomas P. Line's counsel is $19,557.50.

### d. Adjustments Of The Lodestar

 After the lodestar is determined, the Court must next determine whether or not any enhancement or reduction is necessary. *Norman*, 836 F.2d at 1302. If the result was partial or limited success, then the lodestar must be reduced. *Id.* If the result is excellent, the Court should compensate for all hours reasonably expended. *Id.* The Court may enhance the lodestar if the result is exceptional. *Id.*

In this case, the defendants agree that the state law claim and the vagueness claim were not unreasonable. The Court finds that these claims constituted approximately 15 percent of the time reasonably spent in this case. After reducing the lodestar by 15 percent, the reasonable attorney's fee for the defendants' counsel in this case becomes $209,279.27, and the reasonable attorney's fee for Thomas P. Line's counsel becomes $16,623.87.

 The plaintiffs also claim that the attorney's fees award already made in this case as a sanction should reduce the award. This Court agrees that the amount already paid by counsel as a sanction to the defendants need not be paid by plaintiffs. The Court shall accordingly reduce the attorney's fee of the defendants by $6,000.00. After reducing $209,279.27 by $6,000.00, the remaining attorney's fee for the defendants' counsel is $203,279.27. The attorney's fee for counsel for Thomas P. Line shall remain unchanged at $16,623.87.

The Court rejects plaintiffs' argument that the Court should further reduce the attorney's fee by all hours that the defen-

dants spent on the second and third amended complaints. Although the Court did indeed sanction counsel for filing these complaints, the sanction did not compensate the defendants for all the attorneys' fees reasonably incurred but served only to sanction counsel for unreasonable conduct that violated Fed.R.Civ.P. 11.

■ The plaintiffs also claim that the amount of the award should be limited due to the plaintiffs' indigence. The Court finds that it is undisputed that Loren Horner has no funds. In light of plaintiff Horner's indigence and her relatively small stake in the case when compared to DeSisto College, the Court shall limit plaintiff Horner's liability for attorney's fees to $10,000 to the defendants, and $1,000 to Thomas P. Line. The Court finds, however, that there is a dispute as to whether or not DeSisto College, Inc. does or does not have funds. The Court believes that there is a significant question whether or not the corporate entity of DeSisto College, Inc. can be disregarded or "pierced" and will not reduce the lodestar as to DeSisto College. Whether or not DeSisto College's corporate entity can be disregarded so as to render DeSisto College's stockholders liable for the judgment is not, however, for this Court to decide. Such a decision can be made by the court that entertains any collection action that the defendants may choose to institute. This Court states no view on how or whether such a collection action should be successful.

B. Fed.R.Civ.P. 11 Sanctions

■ Fed.R.Civ.P. 11 [12] requires that a Court impose sanctions on persons who sign papers filed in federal court if the

Court finds that the person signed the paper without first having conducted a reasonable inquiry into whether or not the paper was well grounded in fact and was warranted by existing law or a good faith argument for the extension of existing law. The rule creates an objective standard of bad faith that requires that counsel and parties conduct themselves reasonably under the circumstances. *Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir.1987). A showing of subjective bad faith is unnecessary. *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988).

■ The obligations of counsel and parties under Fed.R.Civ.P. 11 continue throughout the litigation. *Lee v. Criterion Insurance Company*, 659 F.Supp. 813 (S.D.Ga.1987); *Woodfork v. Gavin v. Holcomb, Dunbar, Cornell, Chaffin & Willard, A*, 105 F.R.D. 100 (N.D.Miss.1985). Furthermore, when an attorney seeks to change existing law, the attorney must candidly inform the Court of that fact. *United States v. Milam*, 855 F.2d 739 (11th Cir.1988).

■ Although the Court finds that this case was unreasonable for purposes of 42 U.S.C. § 1988, and that plaintiffs' counsel was not candid with the Court in litigating foreclosed claims in an effort to change existing law, the Court cannot find that counsel's conduct falls outside the range of good faith conduct practiced by many attorneys who appear before this Court. This Court, therefore, cannot find that the defendants have presented sufficient evidence which objectively establishes counsel's bad faith. The Court will deny the motion for sanctions under Fed.R.Civ.P. 11.

Accordingly, it is

---

12. Fed.R.Civ.P. 11 provides in pertinent part as follows:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any proper purpose, such as to harass or to cause unnecessary delay or need-

less increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
Fed.R.Civ.P. 11.

ORDERED:

1. That Plaintiff's Motion For Review Of The Clerk's Taxation Of Costs, filed May 9, 1989, is granted in part and denied in part.

2. That Defendants' Amended Motion For Attorneys' Fees, Pursuant To 42 U.S.C. § 1988 & Rule 11, filed April 24, 1989, is granted in part and denied in part.

3. That the Clerk of Court shall enter a judgment on a single document for the defendants and against the plaintiffs jointly and severally for costs in the amount of $17,194.12; for the defendant Thomas P. Line and against the plaintiffs jointly and severally for costs in the amount of $242.00; for the defendants and against the plaintiffs jointly and severally for attorney's fees in the amount of $203,279.27 with Loren Horner's liability limited to $10,000.00 of this amount; for the defendant Thomas P. Line and against the plaintiffs jointly and severally for attorney's fees in the amount of $16,623.87 with Loren Horner's liability limited to $1,000.00 of this amount.

4. That defendants' original bill of costs is hereby vacated.

5. That Thomas P. Line's original bill of costs is hereby vacated.

DONE AND ORDERED.