**A. C. NEWMAN, Jr., Plaintiff-Appellee-Cross Appellant,**

v.

**A. E. STALEY MANUFACTURING COMPANY, a corporation, Defendant-Appellant-Cross Appellee.**

No. 80–7221.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 18, 1981.
Rehearing Denied Aug. 7, 1981.

Hobbs, Copeland, Franco & Screws, Euel A. Screws, Jr., Montgomery, Ala., for defendant-appellant-cross appellee.

Walker, Hill, Adams, Umbach & Herndon, Hoyt W. Hill, Opelika, Ala., for plaintiff-appellee-cross appellant.

Before GODBOLD, Chief Judge, and FRANK M. JOHNSON, Jr., and ANDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Plaintiff Newman filed suit in Alabama circuit court against defendant Cameron (a feed commodities broker), defendant Staley Manufacturing Company (a manufacturer of cattle feed), and other defendants who were dismissed from the suit before trial. Plaintiff alleged that defendants produced, brokered, and sold cattle feed that, when fed to plaintiff's cattle, caused death to a great number of the cattle, caused illness among the herd, caused interruption of plaintiff's feeding and maintenance program, and otherwise adversely and injuriously affected plaintiff's cattle. Alleging diversity jurisdiction defendants removed the case to federal court. Following jury verdicts for plaintiff Newman and defendant Cameron, defendant Staley Manufacturing Company appeals.

Staley Manufacturing Company [Staley] urges five grounds for reversal: first, that the jury verdict is not supported by sufficient evidence that the feed produced by Staley proximately caused the injuries suffered by plaintiff; second, that the district court abused its discretion and thereby denied Staley due process by refusing to allow it to call a witness who was not on defendants' pretrial list of witnesses; third, that plaintiff Newman's counsel engaged in prejudicial conduct warranting a new trial; fourth, that the district court abused its discretion and thus unduly burdened Staley's right to a fair jury trial by making prejudicial remarks from the bench; and, last, that the damage award was excessive as not being supported by the evidence. Newman cross-appeals, complaining that the district court erred in failing to award him the cost of copying depositions.

We find no merit to the contention that the evidence did not support the jury verdict that the cattle feed proximately caused the injuries suffered by plaintiff Newman. Staley argues that even though Newman urged as a legal theory the existence of a toxic substance in the feed, he did not prove that the feed contained a toxic substance. But under Alabama law Newman was not required to prove the existence of a specific defect. Rather, the existence of a defect in a product may be inferred from the damage caused when the product is put to its intended use. *See, e. g., Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976); *Casrell v. Altec Industries, Inc.,* 335 So.2d 128 (Ala.1976). Without belaboring the point we find that Newman presented such evidence. Since the state of the proof is such that reasonable and impartial minds could reach the conclusion expressed in the verdict, *see, e. g., Blount Brothers v. Reliance Insurance Co.,* 370 F.2d 733 (5th Cir.), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1689, 18 L.Ed.2d 627 (1967), we will not disturb the verdict upon the jury's credibility determinations.

We next turn to the contention that the district court erred by refusing to allow Staley to call a witness who had not been named in defendants' pretrial list of witnesses. Staley contends that until trial Newman based his damages only on the death and illness to his cattle allegedly caused by the feed. At trial, however, Newman testified that his damages were partially caused by his inability to secure substitute feed for his cattle, resulting in the malnutrition or starvation of his cattle. In presenting its case, Staley sought to call as a witness a Mr. Fuqua to testify that Newman could have easily secured feed for his cattle. This witness was not named in defendants' pretrial list of witnesses as required by the pretrial order. Newman's counsel objected to Mr. Fuqua being al-

lowed to testify, saying that Newman testified in his deposition taken almost a year before trial that feed was in short supply and that he did not have available feed and thus defendants should have anticipated the need to meet Newman's trial testimony. Counsel for Staley stated that he did not recall Newman testifying in his deposition that his cattle were starving because he could not secure feed for them. Defense counsel further asserted that "[t]his is the first time to my knowledge that Dr. Newman has maintained anywhere in this case that he couldn't get feed to feed his cows." Expressly relying on the representation of plaintiff Newman's counsel and the factor that counsel for Staley could ascertain the accuracy of this representation,[1] the district court refused to allow the witness to testify.

After presenting several more witnesses, defendant Staley rested. Plaintiff presented two witnesses in rebuttal, and the jury was dismissed for the night. Defendant Staley then asked the court to reconsider its decision to disallow Mr. Fuqua's testimony on the ground that plaintiff's counsel asked one of Staley's witnesses whether plaintiff Newman had told the witness that he did not have any feed for his cattle. Counsel for Staley did not at that time urge that the representation made earlier by Newman's counsel was inaccurate. The district court refused to reconsider its earlier decision.

The next day plaintiff completed his rebuttal, defendants presented their surrebuttal, and both sides presented closing arguments. Defendant Staley did not again urge reconsideration of the decision not to allow Mr. Fuqua to testify as a "rebuttal" witness.[2]

The decision to modify or enforce a pretrial order is discretionary with the trial court and will not be disturbed on appeal absent an abuse of discretion. *E. g., Davis v. Duplantis*, 448 F.2d 918 (5th Cir. 1971); *Wright Rootbeer Co. of New Orleans v. Dr. Pepper Co.*, 414 F.2d 887 (5th Cir. 1969). Failure of a district court to allow defendant to present a witness who was not named in a required witness list to testify contrary to the plaintiff's evidence is not an abuse of discretion if the defendant was on notice that the plaintiff would present the evidence at issue. *Keyes v. Lauga*, 635 F.2d 330, 335 (5th Cir. 1981). Thus, if plaintiff Newman testified in his deposition that his cattle were suffering because he could not secure feed from other sources, defendants should have been prepared to meet this evidence. In fact, in his deposition New-

---

1. The record contains the following bench conference:

   THE COURT: As to the rebuttal witness, Mr. Hill [plaintiff Newman's attorney] says that Dr. Newman testified back nearly a year ago that food was short, it was very hard to find the amount of feed he needed to help him in his size operation and that he had to wait awhile to find food and the cattle suffered to some extent for that reason. If that is true, and Mr. Hill who is an officer of this court says it is, you prior to now could have found a witness in rebuttal on the subject if rebuttal was desired. In any event I—

   [Attorney for defendant Staley]: I don't want to argue with the Court but I am not convinced that Dr.—my recollection with as many witnesses, and so forth, in here, I am not agreeing with Mr. Hill that Dr. Newman testified to that on his deposition.

   THE COURT: Well, the record will speak for itself there. I don't expect you to agree with Mr. Hill. You stated you don't know whether it says that or not. Mr. Hill says it does.

   [Attorney for defendant Staley]: I don't have the recollection that the cattle were starving.

   THE COURT: You have got a record on it, you can find out. I am relying on that factor. However, let me say this, I do expect you to know the facts that you are going to develop in a civil case and I do expect you to be prepared with rebuttal witnesses and I won't allow it unless you show me good cause why you couldn't have known something you needed to rebut and show me good cause as to why you didn't rebut it with a listed witness.

2. In characterizing Mr. Fuqua as a rebuttal witness, defendant Staley fails to recognize that "a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." *Morgan v. Commercial Union Assurance Co.*, 606 F.2d 554, 556 (5th Cir. 1979).

man did not testify that his cattle were suffering from his inability to secure substitute feed, and his counsel's representation to the court, while in apparent good faith, was erroneous.[3] If the misrepresentation had been called to the attention of the district court and the district court had adhered to its position, defendant Staley would be in a much better position to argue that the court abused its discretion. But even though defense counsel had an overnight recess during which he could ascertain that plaintiff's counsel was in error, defense counsel did not bring this error to the attention of the court. On appeal counsel for Staley does not attempt to explain why he did not inform the court of the error; in light of the district judge's instruction that he was relying on counsel's ability to check the record, we can only assume that defendant Staley abandoned the argument. Viewed in this light, we do not think that the district court abused its discretion is disallowing Mr. Fuqua's testimony.

■ As a third ground of error, defendant Staley offers the argument that plaintiff's counsel made several improper remarks calculated to inflame and prejudice the jury. To justify a reversal based on improper comments of counsel, the conduct of counsel must be "such as to impair gravely the calm and dispassionate consideration of the case by the jury ...." *Spach v. Monarch Insurance Co.*, 309 F.2d 949, 953 (5th Cir. 1962). Applying this legal principle, only one of counsel's remarks warrants discussion; the other comments, taken separately or cumulatively, clearly do not justify a reversal.

■ In plaintiff's opening statement, counsel told the jury that plaintiff Newman would testify that one of Staley's employees told Newman that the feed was the cause of the problems. In fact, Newman did not testify about this alleged admission. If no other evidence had been offered supporting the opening statement of plaintiff's counsel, a new trial would be necessary because of the obvious substantial prejudice to defendant. *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284–85 (5th Cir. 1975) (a false "admission," injected into jury argument without any proper basis whatever, is grossly improper and clearly prejudicial). But evidence concerning the admission was placed before the jury by counsel for Staley when he introduced into evidence the deposition of plaintiff Newman. In his deposition, Newman explicitly testified about the alleged admission. In light of the jury's access to Newman's deposition testimony, the statement made by plaintiff's counsel in opening argument does not require reversal.

We now address Staley's complaint that the district court made prejudicial remarks from the bench and in doing so unduly burdened Staley's right to a fair trial. While remarks made by a district judge within the hearing of the jury are often necessary, the judge should take care not to give the impression that he or she prefers one litigant over another. A district judge should always bear in mind that "[t]he influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" *Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933).

■ In its brief, Staley points to numerous remarks made during the course of the trial. In appraising the effect of these comments, we will consider the record as a

3. Newman points to the following deposition testimony as supporting his counsel's assertions at trial:

A [Dr. Newman]: Because I had to sell [the cattle] before they were ready to sell.
Q: I mean why?
A: The feed program broke down, didn't have the feed—feed was not what I bought and couldn't—they didn't perform on it. I was feeding them the feed and they were dying, so I rented that pasture and moved them off down there and grazed that out and just had to sell them rather than carry them home.

In our opinion, this testimony does not support the representation of Newman's counsel to the district court.

whole, not merely isolated remarks. *United States v. James*, 528 F.2d 999, 1022 (5th Cir. 1976), *cert. denied sub nom.*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326; *see Globe Life & Accident Insurance Co. v. Still*, 376 F.2d 611 (5th Cir. 1967). When a timely objection was made at trial, we will inquire whether the remark impaired a substantial right of the objecting party. Fed.R.Civ.P. 61. When a timely objection was not made at trial, however, appellate review is not precluded. "Where a trial judge's comments were so prejudicial as to deny a party an opportunity for a fair and impartial trial, the absence of objections will not preclude our review since counsel will be loathe to challenge the propriety of a trial judge's utterances for fear of antagonizing him and thereby prejudicing a client's case." *Miley v. Delta Marine Drilling Co.*, 473 F.2d 856, 857–58 (5th Cir.), *cert. denied*, 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973). Although not precluded, appellate review is limited to review for plain error. *E. g., Morreale v. Downing*, 630 F.2d 286 (5th Cir. 1980). At trial Staley timely objected to some of the allegedly improper comments of the trial judge; we will accordingly review these remarks to ascertain whether they affected a substantial right. Staley did not object to other allegedly improper statements, and our review of these statements is limited to review for plain error. Of course, even though our review of the individual remarks will be governed by two standards, in evaluating the effect of the comments we must consider the record as a whole.

■ We think it necessary to set forth some of the comments urged by Staley as improper. One of the objections concerns the district court's handling of an objection by Staley to a witness giving an opinion concerning the cause of death of the cattle. Staley objected on the basis that the witness had not testified that he had observed the cattle during the pertinent time periods. Upon Staley's objection, the district judge *sua sponte* inquired whether the witness had observed the cattle during the time period.[4] Upon receiving affirmative an-

---

4. The following colloquy occurred:

[Attorney for defendant Staley]: I object to [the witness] giving an opinion as to the cause of death of the cattle at the Owens Feedlot.

THE COURT: On what basis?

[Attorney for defendant Staley]: On the basis that he has not testified that he observed the cattle being fed, he did not testify as to the formula of feed being fed, he did not testify as to how they were being fed, he had any knowledge of the feeding of the cattle themselves. His testimony is solely based on that he saw some sick and dead cattle some four or five days after they became sick. On one occasion, the second occasion, it was some ten days or a week after the cattle became sick and started dying, and for him to give an opinion as to what was the cause of death, I think it is essential he should have observed the cattle in the state they were at the time they became sick.

THE COURT: I understand Mr. Blanton [the witness] has been in the cattle business operating various forms of cattle business virtually all of his life. He is thirty years old. He has been in it fifteen years he said. I believe even though he is not trained as a nutritionist, as a textbook nutritionist or as a textbook veterinarian, his experience would qualify him and he is talking about a herd of cattle that he had been engaged in moving about on various occasions, he saw this herd of cattle at the feedlot several times before they became sick, if they became sick, and I don't pass on that; he saw them at the time they were sick and dying, if they were in fact taken sick and dying; he saw other cattle he was more intimate with and actually managed, as I understand it. Is that not true, Mr. Blanton, for Dr. Newman? Didn't you manage one of those herds?

A: Yes, sir.

THE COURT: And didn't those cattle get sick and you observed them, some of them, the group that you managed for him?

A: Yes, sir.

THE COURT: Did some of them get sick?

A: No, sir.

THE COURT: They did not get sick?

A: No, sir.

THE COURT: All right, tell us about how often you saw those cattle up around the Clinic?

A: I would say about every three days.

THE COURT: At that time you saw them about every three days?

A: Yes, sir.

THE COURT: Over a period of several months?

A: Yes, sir.

THE COURT: And continuing through the time of about December 20 of 1977?

A: Yes, sir, because I tried to get the ones up that were sick and needed attention, and that's why I associated it within that period.

swers, the district judge overruled Staley's objection. A similar objection and inquiry were made when two other witnesses were asked the same question.

Staley offers as another improper remark a comment made by the district judge to plaintiff Newman. When Newman was testifying on direct examination, he volunteered unresponsive answers. After admonishing him to merely answer his attorney's questions, the district judge stated, "I have known you a long time. I hate to be rude to you but I am going to be if I have to be." No objection was made at that time.

Another allegedly improper remark was made in an attempt to clarify a question. Counsel for Staley asked plaintiff Newman what the average weight of his cattle had been. The district court intervened and asked counsel, "Now, are you asking about all of them or the ones he had in the feedlot at the time they were poisoned? Without objecting to the use of the word "poisoned," defense counsel clarified his question and Newman answered it. The district court then attempted to remedy the harm by instructing the jury:

> Ladies and gentlemen of the jury, I mentioned the word "poisoned" a minute ago. I should not have mentioned the word "poison." That was an improper reference on my part. I meant to say "at the time the cows died." I tried to withdraw it but the lawyer was talking and I had to stop and let him get through. So disregard the statement that I made. Of course, I don't know anymore about this case than you do, so I don't know whether there was any poison or not. And I did not—that was simply an inadvertent statement.

One of the jurors responded: "If it kills it's more like poison."

The last incident that we will recount concerned plaintiff Newman's method of accounting. A certified public accountant testified on Staley's behalf that Newman used a cash receipts and disbursements method of accounting and that the number of deaths in Newman's herd could not be ascertained by reviewing Newman's accounting records. On rebuttal Newman testified that the Internal Revenue Service had never criticized his method of accounting. Counsel for Staley objected, saying that "[a]ll we proved by his accounting was that there was no record showing how many cattle died." The district judge replied, "Well, you implied a good deal more, Mr. Screws, [counsel for Staley], and he has a right to answer those implications." Later, outside the presence of the jury and without prompting from counsel, the judge told the attorneys that he wanted to instruct the jury about the accrual and cash receipts methods of income tax accounting. Counsel for Staley objected to the instruction. The judge told counsel that he had implied that plaintiff Newman was "doing something sinister" and that the jury should know that Newman's method of accounting was acceptable. Counsel for Staley inquired, "isn't that a proper matter for rebuttal [by Newman] rather than by the Court?" The judge replied that it was a matter of law. An explanation of the two accounting systems was included in the jury charge.

Viewing these comments and the record in its entirety, we believe that reversal is mandated. Although there is no indication that the district judge was in fact biased, the jury could have easily concluded that the judge favored plaintiff's position. A new trial is necessary.

■ Our disposition of the above issues renders unnecessary the consideration of defendant Staley's contention that the damage award was excessive. Likewise, plaintiff Newman's cross-appeal concerning taxing as costs the expenses of depositions is now moot. Nevertheless, because the latter issue may again arise on remand, we think it appropriate to refer the parties to the legal principles enunciated in *United States v. Kolesar*, 313 F.2d 835 (5th Cir. 1963).

THE COURT: I think he is qualified to testify to what he thinks was responsible for the sickness and death of these cattle. Overrule the objection.

Our opinion in *Kolesar* clearly teaches that rigid rules play no role in determining whether the cost of a deposition is taxable. Rather, the district court must evaluate the facts of each case and determine "whether all or any part of a copy of any or all of the depositions was 'necessarily obtained for use in the case.'" *Id.* at 840. In making this evaluation, a district judge has great latitude in determining whether a deposition was "necessarily obtained for use in the case" or was obtained merely for the convenience of the attorney. Accordingly, reversal on an issue involving taxation of costs will require an abuse of discretion. *See also Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316 (5th Cir. 1978).

REVERSED AND REMANDED.