# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40340

United States Court of Appeals
Fifth Circuit

**FILED**
February 10, 2020

Lyle W. Cayce
Clerk

GUY RICHARDS,

　　　　Plaintiff - Appellant

v.

LUFKIN INDUSTRIES, L.L.C.,

　　　　Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:14-CV-136

Before CLEMENT, HIGGINSON, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

Guy Richards brought this employment discrimination action against his former employer, Lufkin Industries, L.L.C., alleging that Lufkin violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2–2000e-3, by terminating him in retaliation for his complaint that he was harassed on account of his race. On appeal, Richards contends that the district court erred in granting partial summary judgment, dismissing his retaliation claim; by correcting only one of Lufkin's three peremptory strikes of African

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40340

American potential jurors allegedly based on pretextual explanations; and by making critical comments about his counsel's conduct during the jury trial. We AFFIRM.

## I.

Richards, an African American man, was employed by Lufkin from July 2010, first as a welder and then as a production supervisor, until he was fired on December 7, 2012.[1]  Richards alleges that while working as an hourly welder, a white supervisor named Justin McMahon and some other white co-workers "routinely used racial slurs when addressing Richards." By March 2011, Richards had been promoted to a first-level supervisor position but was still incurring racially motivated and derogatory comments from his white co-workers, specifically McMahon. On March 8, 2011, Richards approached McMahon and asked McMahon not to call him "n*gger." Following this interaction, McMahon and Richards each spoke with the manager to whom they reported.

Richards, dissatisfied with his direct manager's response, reported McMahon's harassment to more senior Lufkin managers, as well as to the Human Resources (HR) Department. Lufkin told Richards that his complaint would be investigated. Over the next few days, Lufkin personnel, including its Vice President over HR and its Compliance Officer, spoke with Richards about McMahon's alleged harassment. During these conversations, Richards requested that he not have to work with McMahon. Following its investigation, Lufkin gave McMahon a five-day suspension and transferred Richards to a lateral position in a different location. In late 2011, Richards filed a charge of discrimination with the EEOC, complaining of racial

---

[1] Richards had been previously employed by Lufkin for some time during 2008–2009; however, that employment is not the subject of an issue on appeal.

2

No. 19-40340

harassment.  About a year later, in late 2012, Lufkin terminated Richards' employment after an investigation into Richards' time reporting indicated that he had falsified his time records.

## II.

Richards timely filed suit in the Eastern District of Texas on September 12, 2014, pursuant to § 1981.  In May 2016, Richards added claims for race discrimination and retaliation pursuant to Title VII.  After answering and some discovery, Lufkin filed a motion for summary judgment on all of Richards' claims of race discrimination and retaliation.[2]  The magistrate submitted a report on Lufkin's motion for summary judgment, recommending, in relevant part, that the motion be granted as to Richards' retaliation claims but denied as to Richards' discrimination claims.  The district court, considering and overruling the parties' objections, adopted the magistrate's report and recommendation.

Richards' remaining claims for racial discrimination went to a trial by jury.  During jury selection, Lufkin used all three of its peremptory strikes on African American potential jurors.  Richards lodged a late *Batson* challenge. The district court upheld the first two of Lufkin's peremptory strikes, but sustained Richards' *Baston* challenge as to the third strike.  The court, after modifying the jury to reflect the one sustained *Batson* challenge, commenced with the trial.  Richards alleges that during trial, the district court made various prejudicial comments in front of the jury.  After the conclusion of the trial, the jury returned a verdict for Lufkin on Richards' discrimination claims. The district court entered judgment in accordance with the jury verdict.

---

[2] Richards filed his own motion for summary judgment on Lufkin's affirmative defenses; however, that motion is not at issue on appeal.

No. 19-40340

Thereafter, Richards filed a motion for a new trial, which the court denied. This appeal followed.

## III.

*A. Summary Judgment on Richards' Retaliation Claims*

We review *de novo* a district court's grant of summary judgment. *Evans v. City of Houston*, 246 F.3d 344, 347 (5th Cir. 2001). Summary judgment is appropriate when the record demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of showing there is no genuine issue of material fact; however, once carried, the burden shifts to the nonmovant to "produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Par. Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). The evidence set forth by the nonmovant is to be believed with all justifiable inferences to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). That being said, the nonmovant may not rest on mere allegations or denials of its pleadings, but rather, must set forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

On appeal, Richards contends that the district court erred in granting summary judgment on his claims for retaliation. Title VII prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." *Id.* § 1981(a).

No. 19-40340

To establish a Title VII retaliation claim, Richards must demonstrate that (1) he engaged in a protected activity under Title VII; (2) Lufkin took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse employment action. *See Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (citing *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000)). We apply the *McDonnell Douglas* burden-shifting framework in determining whether Richards has established a prima facie case of retaliation. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999) (citing *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). If Richards makes a prima facie showing, the burden then shifts to Lufkin to articulate a legitimate, nonretaliatory reason for Richards' termination. *Id.* Once Lufkin has done so, the burden then shifts back to Richards to identify evidence from which a jury could conclude that Lufkin's purported reason for termination is a pretext for retaliation. *Id.*

As to Richards' prima facie case, the parties do not dispute that Richards engaged in a protected activity and was later terminated. The primary issue before us therefore centers on the causation element: whether Richards presented evidence showing a causal link between his protected activity and his termination from Lufkin. In his brief, Richards contends that the district court erred in its causation analysis because it applied an improper, overly stringent, ultimate liability standard at the prima facie summary judgment stage and further that the court erred in not treating the retaliation claims as a hostile environment case. We do not find that the court so erred.

Unlike a discrimination cause of action based on harassment within a hostile work environment, a retaliation cause of action requires a showing of a causal connection between the plaintiff's protected activity and the employer's adverse employment action. *Compare Hernandez v. Yellow Transp., Inc.*, 670

5

F.3d 644, 657 (5th Cir. 2012) (giving the elements for a prima facie retaliation case), *with id.* at 654 (giving the elements for a claim of hostile work environment), *and Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (giving the elements for a prima facie discrimination case).  Here, the district court found no genuine issue of material fact existed as to the causation element of Richards' retaliation claim, citing a lack of knowledge on the part of David Duford, Bob Day, or John Streety, as well as a lack of temporal proximity between Richards' protected activity and his termination.

Richards, on appeal, attempts to use our circuit's decision in *Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017) to support his contention that the district court's causation analysis at the summary judgment stage was too stringent.  This comparison, however, is inapposite.  In *Starnes*, this court held that evidence allowing a reasonable jury to find that the purported reason for termination was a pretext for retaliation at the third stage of the inquiry could also establish the "much less stringent" causation requirement at the prima facie stage.  *See id.* at 634–35.  The circumstances of *Starnes* are factually distinct from the instant case.  Here, Richards cannot make any showing that his termination was motivated by a desire to retaliate against him for his protected activities.  Richards contends that because the district court, on his discrimination claim, found sufficient evidence to establish a factual issue as to pretext, that pretext evidence is "related" and could satisfy the causation element of his retaliation claim, as well.  Yet, the district court's finding here is not analogous to the pretext finding relied upon by the *Starnes* panel.  There, the court relied on a finding of possible pretext in a related retaliation claim, the same claim that Starnes sought to prove.  *Id.* at 635.  Here, Richards has two distinct claims – harassment and retaliation – which implicate different elements to make a prima facie showing at the summary judgment stage. The district court, finding evidence of pretext on Richards' discrimination claim,

concluded that a nexus existed between Richards' termination and *his status as a member of a protected class*. By contrast, on Richards' retaliation claim, any evidence of pretext which could have been used to supplant the causation element would have needed to demonstrate a causal link between Richards' termination and *his protected activity*. The district court, however, did not find such a causal connection, and neither do we.

As to Duford's, Day's, and Streety's knowledge that Richards engaged in protected activities, the record evidence supports a finding of some knowledge. A few weeks before his termination, Richards reported to Duford an incident in which a coworker showed Richards a black dildo, according to his own testimony and the testimony of a third party. Also, Duford investigated "the Schumaker incident" that Richards reported in July 2011, wherein Richards complained to HR that McMahon told Richards that James Schumaker, another Lufkin employee, had used racial epithets to refer to Richards. Finally, Day was aware that Richards was involved in the class action alleging that Lufkin's promotion practices had a disparate impact on black employees' promotions, and Streety learned of Richards' involvement before he was officially terminated. All of these activities likely fall within the realm of protected activity. *See* 42 U.S.C.A. § 2000e-3 (prohibiting discrimination toward an employee who "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]"); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (treating participation in a class action as protected activity); *Long v. Eastfield Coll.*, 88 F.3d 300, 305, 308 (5th Cir. 1996) (treating internal complaints as protected activity).

Yet, despite finding some knowledge of protected activities, we conclude that Richards has not established a causal connection between his protected

activities and his termination.  First, Streety testified that other employees, including white employees, were also fired for filing false timesheets.  Second, Richards gave no explanation for the discrepancies in several of his time sheets when confronted about them.  The only evidence that Richards points to as showing that his termination for timesheet falsification was illegitimate is the testimony of two other employees, Thompson and Santana.  But Thompson merely testified that she did not remember most of the events from that time, and that she never knew Richards to do "anything wrong."  Santana testified that he didn't remember speaking to Duford about Richards' timesheets.  This testimony has little bearing on whether the timesheet investigation and Richards' termination were pretextual.  Finally, while the dildo incident was close in time to Richards' termination, Duford had knowledge of Richards making similar internal complaints, *e.g.* the Schumaker complaint, a year and a half before his termination.  Richards gives no reason why Duford would retaliate against him for his most recent complaint but not for previous, similar complaints.  Taken together, this evidence does not support a causal connection between Richards' protected activity and his termination.  *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 169 (5th Cir. 1999) (holding that plaintiff had not proven causation when the employer's "perfectly rational justification" for discharge was "a workplace infraction which is not seriously disputed" and plaintiff provided only "[t]he speculations of a few co-workers" in support of his retaliation theory).

Furthermore, the time that had elapsed between Richards' complaint about McMahon and his termination was nearly twenty-two months, and between Richards' EEOC filing and his termination was twelve months. While not always determinative, the lack of temporal proximity between Richards' termination and these two protected activities "undermine(s) any causal connection" between the events.  *See Raggs v. Miss. Power & Light Co.*, 278

F.3d 463, 471–72 (5th Cir. 2002). We, therefore, find no error in the district court's grant of summary judgment on Richards' retaliation claims.

*B. Lufkin's Peremptory Strikes*

Next, Richards contends that the district court erred in correcting only one of Lufkin's three peremptory strikes to exclude jurors allegedly based on their race. In *Batson*, the Supreme Court outlined a three-step process for determining whether peremptory strikes have been applied in a racially discriminatory manner. *Batson v. Kentucky*, 476 U.S. 79, 93–98 (1986). First, the party making the claim of purposeful discrimination must make a prima facie showing that the peremptory challenges were based on race. *Id.* Then, the burden shifts to the party accused of discrimination to provide race-neutral reasons for the peremptory challenges. *Id.* Finally, the district court determines whether purposeful discrimination has been established. *Id.* Because the district court's determination is a finding of fact, we cannot overturn its decision absent clear error. *United States v. Bentley-Smith*, 2 F.3d 1368, 1372 (5th Cir. 1993). Furthermore, the district court's determination is "entitled to great deference" because the district court is better positioned to evaluate the credibility and demeanor of the attorneys involved. *Id.* at 1373.

Based on our review of the record, the district court did not commit reversible error in rejecting Richards' challenges to two of Lufkin's three peremptory strikes. As an initial matter, the district court noted in its memorandum opinion that Richards made the *Batson* objection belatedly. *See United States v. Abou-Kassem*, 78 F.3d 161, 167 (5th Cir. 1996). Nevertheless, the court considered Richards' *Batson* challenges "in light of the importance of a party's right to equal protection" and because Lufkin did not ask the court to reject the claim as untimely. The court noted that Richards had made a prima facie showing of racial bias because all three struck jurors were African American; however, after conducting a thorough analysis of the issues, the

court concluded that Lufkin had articulated credible race-neutral reasons for two of its three peremptory strikes. The court further analyzed whether Lufkin's peremptory strikes showed a pattern that indicated purposeful discrimination. In its analysis, the court acknowledged that Lufkin had used all three of its peremptory strikes on African American jurors but ultimately concluded that it was not enough, on its own, for the court to discount Lufkin's good and sufficient race-neutral reasons for two of the three strikes. The court further noted that it was not required to discount Lufkin's reasons for two of its peremptory strikes simply because the court found against Lufkin on the third strike. *See, e.g.*, *Bentley-Smith*, 2 F.3d at 1376. Upon review of the record and the district court's well-reasoned analysis, we conclude that the district court applied the proper test in considering Richards' *Batson* challenges, and its decision to deny Richards' challenge on two of Lufkin's strikes was not clearly erroneous.

*C. Court's Comments to Richards' Counsel*

Finally, Richards contends on appeal that the district court's conduct throughout trial gave the jury a negative impression of Richards' counsel and consequently deprived Richards of a fair and evenhanded trial. After extensive review of the trial transcript and proceedings, we are not persuaded that the court's conduct during trial tainted the verdict.

When reviewing the effect of the court's comments, we do not consider isolated remarks and instead consider the record as a whole. *Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 334–35 (5th Cir. Unit B June 1981). From there, the standard of review applied is dependent upon whether a timely objection to each of the court's remarks was made at trial. *Id.* at 335. If Richards lodged a timely objection, we will inquire whether the court's remarks impaired a substantial right of Richards. *See id.* However, if Richards did not object to the court's remarks, our review, though not precluded, will be limited to review

for plain error. *See id.* Under a plain error standard of review, reversal is not required unless there has been a miscarriage of justice. *Morreale v. Downing*, 630 F.2d 286, 290 (5th Cir. 1980). Here, however, it is not necessary for us to determine whether Richards lodged a sufficient objection because even under the more rigid standard of review, we conclude that Richards' substantial rights were not affected by the court's conduct.

In determining whether the district court's conduct was appropriate, we scrutinize the record carefully because the district court has an "enormous influence" on the jury. *United States v. Williams*, 809 F.2d 1072, 1086 (5th Cir. 1987). However, we do not require the court to conduct a perfect trial, only that it afford the parties a fair trial. *See id.* We recognize too that the court is not a "mere moderator of the proceedings." *Id.* at 1087 (quoting *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979)). The court, in its discretion, may comment on the evidence and may even interrupt or warn counsel during examination of a witness. *Id.* Indeed, even if we find some of the court's comments to be abrupt, unnecessarily harsh, or even regrettable, we cannot say that the complaining party is deprived of a fair trial unless the court's conduct "strays from neutrality." *Id.* at 1087–89 (quoting *Moore*, 598 F.2d at 442). Yet, judicial remarks made during the course of a trial that are critical or even hostile to counsel do not ordinarily establish bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994).

Here, the district court did, at times, express impatience, dissatisfaction, or frustration with Richards' counsel. Nevertheless, the court's conduct in these instances does not support a finding of bias or impartiality against Richards. *See id.*; *see also Williams*, 809 F.2d at 1087–89. The majority of the court's comments about which Richards complains clearly fall within the court's broad discretion to manage its docket, including trial procedure. *See United States v. Gray*, 105 F.3d 956, 964 (5th Cir. 1997) (citing *Sims v. ANR*

*Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996)). The court's warnings to Richards' counsel regarding his arguments or attempted admissions of evidence, while obviously unfavorable to Richards, showed no bias or impartiality such that they would taint the jury's perception of Richards, his claims, or his counsel. In fact, the record reflects that throughout the trial, the court's conduct was motivated by its desire to avoid jury confusion or influence by either the court or counsel. Further, the court specifically instructed the jury at the beginning and the end of trial that they should not take the judge's comments as indicating any opinion about the merits.

We found only one comment from the court that was arguably improper. In response to a flippant comment from Richards' counsel, the court remarked, "Counsel, I have warned you before about sidebar remarks. Are you just asking to be held in contempt or just trying to push me so you can say that there is some kind of prejudice against you in the court? Which one is it?" This court has, in no uncertain terms, stated that a district court should not sanction an attorney in the presence of the jury. *Bufford v. Rowan Cos., Inc.*, 994 F.2d 155, 159 (5th Cir. 1993). However, there is no *per se* rule requiring reversal for a threat of contempt. *Cf. Williams*, 809 F.2d at 1090 (holding that reversal was not warranted when the trial judge actually fined a lawyer for contempt in front of the jury). Viewing the proceedings as a whole, we do not find that the court's comment so permeated the proceedings such that it cast doubt on the jury's verdict. *See Bufford*, 994 F.2d at 157 n.1 (citing *Dixon v. Int'l Harvester Co.*, 754 F.2d 573 (5th Cir. 1985)). Accordingly, Richards' substantial right to a fair trial was not affected.

## IV.

Finding no reversible error, we AFFIRM the district court's final judgment.