[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13765

_____

D.C. Docket No. 1:15-cv-24363-KMW

MARJAM SUPPLY COMPANY OF FLORIDA, LLC,
MARJAM SUPPLY COMPANY,

Plaintiffs - Appellants,

versus

PLITEQ, INC.,
PAUL DOWNEY,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 27, 2020)

Before MARTIN, GRANT, and LAGOA, Circuit Judges.

MARTIN, Circuit Judge:

Marjam Supply Company of Florida, LLC and Marjam Supply Company ("Marjam") appeal the District Court's order denying Marjam's motion for judgment as a matter of law and for a new trial. Marjam challenges the sufficiency of the evidence of damages awarded to Pliteq, Inc. and Paul Downey, the owner of Pliteq, (collectively, "Pliteq") and also takes issue with several of the District Court's evidentiary rulings. After careful review, we affirm.

## I. BACKGROUND

Pliteq manufactures and sells sound isolation products, including its GenieMat RST ("GenieMat") product. The GenieMat is a flat, rubber mat used in offices and apartment buildings to reduce sound transmission. In March 2014, Marjam (a building materials distributor) and Pliteq entered into an exclusive distributor agreement for GenieMat products. Under the terms of the agreement, Marjam was required to pay in advance for its GenieMat orders. It initially upheld its end of the bargain. Then in June 2015, Pliteq notified Marjam that Marjam was significantly late on payments totaling $160,000. Pliteq also discovered Marjam was selling competing products. Instead of immediately terminating the agreement, Pliteq refused to ship any product until Marjam paid the past due amount and gave Marjam a chance to respond to these issues. Marjam responded by threatening to take "swift and inordinate" and "extreme and unpleasant" action if Pliteq did not reconsider its position. Pliteq then terminated the agreement.

2

Mark Buller, Marjam's owner, and James Metcalf, Marjam's products manager, began discussing plans to get even with Pliteq. Mr. Buller directed Mr. Metcalf to cooperate with Ecore (one of Pliteq's direct competitors), with the idea that the two companies intended to "cripple" and "bury" Pliteq. The owner of Ecore told Mr. Metcalf that Pliteq was intentionally mislabeling the thickness of its GenieMat products from one of its manufacturers, so the two companies hatched a plan. Marjam agreed to a distribution agreement with Ecore and began selling Ecore products. Then Mr. Metcalf emailed Pliteq saying that "some very 'scary' facts" regarding the thickness of GenieMats "have forced us to 'resolve' this 'my' way." Mr. Metcalf in turn demanded reimbursement for Pliteq's purported fraudulent advertising about the thickness of GenieMats.

Marjam sent a formal demand letter to Pliteq claiming that the GenieMats were not performing. As part of what Mr. Buller described as a "Blitzkrieg" attack on Pliteq, Marjam sent copies of this demand letter to Pliteq's customers with a transmittal indicating that Marjam had "ceased selling GenieMat products" because of "recent information about illegal activity brought to our attention." Marjam also sent copies of its Complaint to Pliteq's customers, including Kast Construction ("Kast"), with the knowledge that Pliteq had an existing relationship with those customers. Marjam warned the customers, writing: "We are extremely concerned about current and future liability." After receiving Marjam's email,

3

Kast planned to avoid using Pliteq products until the dispute with Marjam was "sorted out."

Marjam sued Pliteq for false advertising, breach of warranty, and breach of contract alleging Pliteq distributed and sold non-conforming GenieMats. Pliteq responded and asserted counterclaims against Marjam, saying that Marjam tortiously interfered with contracts and business relationships and engaged in false advertising, unfair competition, breach of contract, and copyright infringement. Each party moved for summary judgment, which the court granted, in part, on each of Pliteq's and Marjam's motions. Marjam proceeded to trial on breach of contract and breach of warranty claims based on its purported loss of the Met 3 project, which it claimed was terminated after the customer found out GenieMats "did not provide the required sound insulation attributes." Pliteq proceeded to trial on its tortious interference, false advertising, and unfair competition claims.

At the close of evidence, Pliteq and Marjam each moved for judgment as a matter of law under Rule 50(a). Pliteq argued that Marjam had not presented sufficient evidence to support either a breach of warranty or a breach of contract claim related to the Met 3 project. The District Court agreed and entered judgment as a matter of law against Marjam on those claims.[1] Marjam argued that Pliteq had

---

[1] At trial, the evidence demonstrated that a range of thickness of the products, known as nominal thickness, was consistent with industry practice; was within Pliteq's reported tolerances; and had no practical effect on the GenieMat's performance. Pliteq also presented evidence that

not presented sufficient evidence to prove causation and damages on its counterclaims. The District Court denied Marjam's motion and submitted Pliteq's claims to the jury. The jury found for Pliteq on each of its remaining claims and awarded $310,000 in compensatory damages and $800,000 in punitive damages.

Marjam then filed a motion for judgment as a matter of law under Rule 50(b), "and/or alternatively" for a new trial under Rule 59. It stated four grounds it believed justified a judgment or a new trial: (1) Pliteq did not present sufficient evidence of causation to establish damages; (2) the District Court improperly excluded the testimony of Diana Manning Yankee, a Kast employee; (3) the District Court refused to admit the in-person testimony of Zach Young, one of Kast's vice presidents; and (4) the District Court did not allow Marjam to call its acoustical sound expert, Bennett Brooks. The District Court denied Marjam's motion. Marjam timely filed a notice of appeal and now challenges the compensatory damages award and the District Court's denial of its motion for a new trial.

## II. STANDARDS OF REVIEW

This Court reviews <u>de novo</u> the denial of a Rule 50 motion for judgment as a matter of law. <u>Nebula Glass Int'l, Inc. v. Reichhold, Inc.</u>, 454 F.3d 1203, 1210

---

no Pliteq customer had ever made a warranty claim or sought to return of any of its GenieMat product.

5

(11th Cir. 2006). "We consider the evidence in the light most favorable to the non-moving party, but we review all evidence in the record and draw all reasonable inferences in favor of the nonmoving party without making credibility determinations or weighing the evidence." Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1211 (11th Cir. 2010) (alterations adopted) (quotation marks and citation omitted). "When reviewing the record, we must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. (quotation marks omitted). "Therefore, we should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (quotation marks omitted).

We review a District Court's denial of a Rule 59 motion for a new trial for abuse of discretion. Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1312 (11th Cir. 2013). "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Id. at 1312–13 (alteration adopted) (quotation marks omitted).

### III.  DISCUSSION

On appeal, Marjam mainly challenges the District Court's denial of its Rule 50 "and/or" Rule 59 motion. As a preliminary matter, we note that Marjam cannot

6

challenge issues under Rule 50(b) that were not raised in its Rule 50(a) motion at the close of the evidence and prior to the case being submitted to the jury.  Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 903 (11th Cir. 2004).  At the close of evidence, Marjam argued Pliteq failed to present sufficient evidence of causation, but did not challenge the exclusion of the live testimony of Ms. Yankee, Mr. Young, or Mr. Brooks.  We will therefore decide all arguments, other than Marjam's challenge to the sufficiency of the evidence, as motions made under Rule 59.  McGinnis v. Am. Home Mortg. Serv., Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (explaining party may move under Rule 59 "on the grounds that the verdict is against the weight of the evidence, that the damages are excessive, or . . . the trial was not fair and may raise . . . substantial errors in admission or rejection of evidence" (quotation marks omitted)).

## A. THE DISTRICT COURT DID NOT ERR IN DENYING MARJAM'S RULE 50 MOTION.

Marjam argues that Pliteq did not present sufficient evidence to show it lost three Kast projects—Aurora Seaside, One St. Pete, and 100 Las Olas—as a result of Marjam's actions.  At trial, Pliteq presented evidence that Pliteq was "spec'd," or specified,[2] by the architect to be used in three projects involving Kast.  Pliteq also introduced a string of emails between Grey Perna, a representative from one

---

[2] Trial testimony established that when an architect spec'd a product, the flooring subcontractor was more likely to purchase that product.

7

of Pliteq's GenieMat distributors, and Zach Young, a vice president at Kast. Mr. Perna reached out to Mr. Young to inform Young he was working with Pliteq, and named GenieMats as a product he would like to review with Kast. Mr. Young responded: "Are you familiar with an on-going lawsuit between Marjam and Pliteq regarding Geniemat products? I am sure there are two sides to the story, but we have been avoiding their products until it is sorted out." Based on Mr. Young's email and the fact that Pliteq did not make the sale for any of those three projects, Pliteq's expert opined that Pliteq lost profits totaling $1,683,303.

Marjam first challenges the sufficiency of Pliteq's evidence on the ground that Pliteq was identified "as being only one of alternative product sources" for the One St. Pete and 100 Las Olas projects. Marjam also argues that Mr. Young's email is not evidence that Pliteq lost Kast projects because Kast does not make the decision about with whom to do business. Rather, the decision about what product to use is based on the architect's specifications ("specs") for each project. Contrary to Marjam's claim, Pliteq offered sufficient proof as to why the architects of those projects elected not to utilize GenieMat. Mr. Downey testified that "Pliteq was specified on [those] project[s] by the architect and except for Marjam's action and interference with our customers we would have been used." And although there was another company bidding on these projects, Pliteq offered evidence that the other company's products "would not have had the ability to meet the

8

specifications that were needed." Marjam did not offer contradictory evidence at trial and has not pointed to any on appeal.

Marjam's secondary sufficiency-of-the-evidence argument hinges on whether the District Court erred in admitting two sets of documents that helped prove causation and damages. We will briefly describe the standard of review we apply for these evidentiary challenges. For a claim of error that was preserved at trial, we review for abuse of discretion. Taylor v. Mentor Worldwide LLC, 940 F.3d 582, 592 (11th Cir. 2019). For an error not preserved by a trial objection on specific grounds, we typically preclude parties from challenging that error on appeal. See Fed. R. Evid. 103(a); see also Judd v. Rodman, 105 F.3d 1339, 1342 (11th Cir. 1997) ("[A]n objection on specific grounds does not preserve the error for purposes of appeal on other grounds."). Appellate courts may, however, review for plain error affecting a "substantial right" even if the claimed error was not properly preserved. See United States v. Feldman, 936 F.3d 1288, 1300 (11th Cir. 2019). A finding of plain error is limited solely to those circumstances that "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." United States v. Young, 470 U.S. 1, 16, 105 S. Ct. 1038, 1046–47 (1985). The appellant must develop their own plain error argument, because we will not "develop a plain error argument for the[m]." 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 103.42 (Matthew Bender 2d ed. 1997);

9

see also Goulah v. Ford Motor Co., 118 F.3d 1478, 1483 (11th Cir. 1997)
(declining to review evidentiary ruling "[a]bsent some good reason for failing to
object at trial").

The first set of challenged documents is the Kast project specs for each of
the three projects, which Marjam claims were inadmissible hearsay.  However, at
trial, Marjam objected only to the admission of the 100 Las Olas specs on hearsay
grounds.  On appeal, Marjam has shown no plain error in the admission of the
Aurora Seaside and One St. Pete specs, so we decline to review it.

Even if the District Court erred in admitting the 100 Las Olas specs, any
error is harmless.  The jury awarded lump-sum damages after hearing testimony on
three separate projects.  The jury was asked whether Marjam was liable to Pliteq
based on any of the three alternative causes of action related to any of the three
projects.  The jury answered in the affirmative on all three causes of action.  It was
then asked to determine the appropriate amount of compensatory damages
stemming from "any" of Marjam's actions.  The jury chose to award $310,000
without allocating a specific amount per cause of action or project.  It follows that
Marjam is not entitled to judgment as a matter of law when it has not shown the
jury's lump-sum award was specifically based on damages for the 100 Las Olas
project.  See Taylor, 940 F.3d at 594 n.8 (noting that because damages were
awarded based on alternative design defect, negligence, and failure-to-warn causes

10

of action, it was not necessary to decide whether the testimony admitted to prove the failure-to-warn theory was properly considered by the jury); see also Stewart & Stevenson Servs., Inc. v. Pickard, 749 F.2d 635, 645 (11th Cir. 1984) (holding that award based on three causes of action are alternate theories of liability that "eliminate any doubt that the award of damages was based wholly on the theory improperly submitted to the jury"). We will not disturb the jury's lump-sum award when Marjam has not shown the award was based on the purported 100 Las Olas specs error.

The second document Marjam challenges is the email from Mr. Young, in which Kast noted it would avoid using Pliteq products until the dispute with Marjam was "sorted out." The District Court did not specify on what grounds the document was admitted because Marjam affirmatively said it had "[n]o objection" to the admission of that exhibit. On appeal, Marjam claims that counsel withdrew his objection "by sheer oversight," and that this email does not fall within the business records hearsay exception, which constitutes "plain error."

Under Federal Rule of Evidence 803(6), documents made and kept in the ordinary course of business are admitted as an exception to the hearsay rule. Itel Capital Corp. v. Cups Coal Co., Inc., 707 F.2d 1253, 1259 (11th Cir. 1983). "The touchstone of admissibility under the business records exception to the hearsay rule is reliability." United States v. Bueno-Sierra, 99 F.3d 375, 378 (11th Cir. 1996)

11

(per curiam).  Pliteq introduced the Young email as an exhibit through Mr. Downey.  The Young email did not fall under the business records hearsay exception because Mr. Downey did not make or keep that email in the ordinary course of Pliteq's business.  See United States v. Jacoby, 955 F.2d 1527, 1537 (11th Cir. 1992) (holding that memoranda dictated by witness during closing of real estate loans left "no doubt" those documents were prepared in the course of a regularly conducted business activity).  But under these circumstances the admission of the Young email did not undermine the fundamental fairness of this trial.

We are not persuaded by Marjam's argument that it suffered prejudice because Mr. Young's unobjected-to email was "the sole evidence" supporting Pliteq's damages claim.  The plain error standard is stringent; it contemplates a range of cases in which we will not disturb a jury verdict despite an evidentiary error.  And the core of Marjam's argument is not an evidentiary challenge to the trustworthiness of the source of Mr. Young's email, but a challenge to the credibility of the information in the email.  See Reply Br. at 3 ("The single, innocuous email from Kast's Young . . . was insufficient to carry Pliteq's burden.").  If Marjam wanted to challenge the content of the Young email, it could have cross-examined Mr. Young at his deposition or called other witnesses "to

controvert the accuracy" of this email.[3]  Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1244 (11th Cir. 2009).  The credibility of Mr. Young's statement—"we've been avoiding [Pliteq's] products"—was a question for the jury to weigh.  Id.  The jury did just that after hearing further testimony from Mr. Young about Kast's concerns over the use of Pliteq's products after Kast received a copy of Marjam's complaint.  We will not disturb the jury's verdict when there has been no miscarriage of justice and the fundamental fairness of trial has not been undermined.

Consequently, Pliteq presented sufficient proof of causation and damages and Marjam's evidentiary challenges do not show the verdict was against the great weight of the evidence.  See Lamonica, 711 F.3d at 1312–13.

## B. THE DISTRICT COURT DID NOT ERR BY DENYING MARJAM'S RULE 59 MOTION.

Marjam argues that three evidentiary errors entitled it to either judgment as a matter of law or a new trial.  First, Marjam claims the District Court erred by excluding the in-person testimony of Mr. Young, one of Kast's vice presidents.  Second, Marjam argues the District Court improperly excluded the testimony of Ms. Yankee, a Kast employee.  Third, Marjam claims the District Court erred when it did not allow Marjam to call its acoustical sound expert, Mr. Brooks.

---

[3] Below, we address Marjam's argument that the District Court erred by not allowing Marjam to call Mr. Young as a live witness at trial.

Marjam also raises several other purported errors for the first time on appeal. None warrant reversal.

1. The District Court Did Not Abuse its Discretion by Limiting Mr. Young's Testimony to Deposition Testimony.

Marjam claims the District Court erred when it refused to allow Mr. Young to testify "for rebuttal/impeachment purposes." Marjam did not identify Mr. Young as a witness, but "intend[ed] to subject [him] to vigorous cross-examination" because Pliteq had listed Young on its witness list. At trial, Pliteq removed Mr. Young from its final witness list, prompting Marjam to add Young to its list. Marjam explained it wanted to ask Mr. Young about the 100 Las Olas project and Marjam's counsel thought he would be able to cross-examine Mr. Young. The District Court limited Mr. Young's testimony to his deposition testimony instead of allowing Marjam to call Mr. Young belatedly. Marjam challenges that decision, characterizing it as a "refusal to permit . . . Young to testify" altogether.

Fatal to Marjam's claim is its failure to show prejudice. The District Court did not completely exclude Mr. Young's testimony—the jury heard his deposition testimony. And Marjam has never argued that, had Mr. Young testified in person, he would have said anything different than what he testified to in his deposition.[4]

---

[4] To the extent Marjam claims that, at trial, they would have asked Mr. Young about the 100 Las Olas specs, this is not sufficient to show prejudice. Marjam knew Pliteq had identified the 100 Las Olas project as a basis for damages and Marjam had the opportunity to ask Mr.

14

Marjam's challenge fails on that basis alone.  See Edic v. Century Prods. Co., 364

F.3d 1276, 1286 (11th Cir. 2004) (affirming evidentiary ruling because appellant

"fail[ed] to explain how these rulings prejudiced them").

### 2. The District Court Did Not Abuse its Discretion by Excluding Ms. Yankee's Testimony.

Next, Marjam claims the District Court erred when it refused to allow Ms.

Yankee to testify.  Marjam moved to call Ms. Yankee as a witness the night before

the sixth day of trial because it had discovered within the two days prior that

Yankee was "in possession of critical evidence not previously disclosed" that

would "refute" Pliteq's damages case.  Marjam explained that Ms. Yankee would

testify that Kast had not yet solicited bids or awarded contracts on its 100 Las Olas

project—meaning that Pliteq's assertion it suffered damages from the loss of this

project was false.  Marjam characterized Ms. Yankee as a rebuttal witness called to

impeach both Mr. Downey's and Pliteq's expert's testimony that Pliteq lost

$630,589 on the 100 Las Olas project.  The District Court held that the 100 Las

Olas project was identified as a basis for damages in August 2017, at the latest, and

therefore information about that project was not newly discovered evidence.

In reviewing for abuse of discretion a court's exclusion of an undisclosed

witness, we consider "(1) the importance of the testimony; (2) the reason for the

---

Young questions on this topic at his deposition.  However, Marjam failed to ask the questions it now claims it was deprived of asking at trial.

15

appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." Bearint v. Dorell Juvenile Grp., Inc., 389 F.3d 1339, 1353 (11th Cir. 2004).  Regardless of the alleged importance of Ms. Yankee's testimony, the reasons for the delay in Marjam's disclosure and the "consequent prejudice" from her testimony require us to affirm the District Court's ruling.  Id.

Marjam's own failure to discover Ms. Yankee's testimony is not reason to find the District Court abused its discretion.  The District Court afforded the parties a significant amount of discovery and several discovery extensions.  And Marjam knew Pliteq would be claiming damages based on Kast projects, including the 100 Las Olas project, as early as August 2017.  Marjam claims it did not know of Ms. Yankee's specific testimony until Friday, May 4, and did not disclose Yankee until Sunday, May 6, the night before the sixth day of trial.  At this late hour, Pliteq "would have been blindsided by a new witness offering facts directly contradicting its own account of events."  Id. at 1354.  Marjam has not offered any reason for its delay in disclosing Ms. Yankee other than to blame Pliteq for not disclosing her as a person with information.  Marjam's failure to discover Ms. Yankee's testimony is not an error by the District Court.

16

3. <u>The District Court Did Not Abuse its Discretion by Prohibiting Marjam from Calling Mr. Brooks as a Rebuttal Expert.</u>

Marjam claims the District Court erred by refusing to allow Mr. Brooks, its acoustical expert, to testify that Pliteq cut the GenieMats thinner than advertised. Marjam claims now on appeal that Pliteq gamed the system by removing their expert from the final witness list, so that Mr. Brooks, who Marjam named only as a rebuttal expert, could not testify.  At trial, the District Court's decision on this matter was concise: Mr. Brooks could not testify "[b]ecause there is nobody to rebut."

"[I]n judging whether the exclusion of a[n] [expert] witness was an abuse of discretion, an appellate court should consider the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party."  Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp., 684 F.2d 776, 780 (11th Cir. 1982).  Though the testimony appears to have been crucial to Marjam's case-in-chief, Marjam has provided no explanation for failing to name Mr. Brooks as its own affirmative expert as opposed to a rebuttal expert.  The District Court did not err here.  Marjam made a strategic error in litigating its case, and its failure to name Mr. Brooks as an expert witness to prove its affirmative claims cannot be blamed on the District Court.

17

4.  The District Court Did Not Abuse Its Discretion In Making Other
    Evidentiary Rulings.

Marjam claims the District Court made several other erroneous rulings.

These challenges fall into two categories.  In the first category are purported errors

raised without legal argument in the fact section of Marjam's appellate briefs.  In

the second category, Marjam challenges portions of Mr. Downey's testimony,

statements made in Pliteq's counsel's closing arguments, and a jury instruction.

Marjam has waived its ability to challenge the rulings in the first category.  See

Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("A

party fails to adequately brief a claim when he does not plainly and prominently

raise it, for instance by devoting a discrete section of his argument to those

claims." (quotation marks omitted)).  And its challenges to the rulings in the

second category fail on the merits.

First, Marjam makes conclusory statements about various rulings.  Marjam

claims (1) the District Court improperly admitted a Pliteq exhibit listing invoices

of GenieMats made by Ultimate RB; and (2) the District Court erred in excluding

portions of Mr. Metcalf's testimony, which Marjam intended to use to establish a

"justification" defense.  Because Marjam has not offered any legal arguments to

support these purported errors, we will not disturb the District Court's rulings.  See

Sapuppo, 739 F.3d at 681.

18

In the second category, Marjam claims the District Court failed to exclude a portion of Mr. Downey's allegedly improper expert trial testimony "on a wide range of highly technical matters." Mr. Downey testified that Pliteq relies on third-party laboratories and professional experts to test its products, including the thickness of its products. The District Court limited this evidence to Mr. Downey's testimony based on his "background and experience and because he contracts with various persons to perform tests" and did not allow Pliteq to introduce the tests themselves. Mr. Downey testified further that he was familiar with how GenieMats were made and how these tests were performed because he has "been in manufacturing for these products since 1992" and was the inventor of the GenieMat. Our precedent makes clear the District Court did not err by allowing this testimony in. We have long held that a business owner may offer lay witness opinions based upon his "particularized knowledge garnered from years of experience within the field." Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1223 (11th Cir. 2003). As such, this testimony was not admitted in error.

Marjam also points to certain statements made by Pliteq's counsel in closing argument, including, among others, that counsel "improperly vouched for Downey's credibility and so-called 'honesty,' perpetuated Pliteq's lie about its purported loss of the 100 Las Olas project, and mischaracterized the clear and

19

convincing standard for punitive damages." Yet again, Marjam did not object to these statements. When reversal is premised "on improper comments of counsel, the conduct of counsel must be such as to impair gravely the calm and dispassionate consideration of the case by the jury." Newman v. A.E. Staley Mfg. Co., 648 F.2d 330, 334 (5th Cir. 1981) (quotation marks omitted).[5] Because Marjam does not explain how it was prejudiced, this claim fails. Edic, 364 F.3d at 1286.

Finally, Marjam argues the jury instruction on "clear and convincing evidence" was improper. Even though it had several chances to object when the parties were proposing and finalizing jury instructions, Marjam failed to do so. In the absence of an objection to the instruction before the jury retires to consider its verdict, "we will reverse only in exceptional cases where the error is so fundamental as to result in a miscarriage of justice." Iervolino v. Delta Air Lines, Inc., 796 F.2d 1408, 1414 (11th Cir. 1986) (quotation marks omitted). No miscarriage of justice occurred here. The District Court adopted the joint proposed jury instruction, which was identical to this Court's Pattern Instruction. The proposed instruction and the instruction read to the jury were essentially the same,

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

and Marjam has not pointed to any other evidence showing the jury was confused about the burden of proof.

## IV.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the District Court's order denying Marjam's motion for judgment as a matter of law and/or a new trial and **AFFIRM** the jury's verdict and damages award.